COURT OF APPEALS OF VIRGINIA

Present:   Judges Kelsey, McClanahan and Senior Judge Bumgardner
Argued at Alexandria, Virginia

ROBERT DANIEL THOMAS

                                             OPINION BY
v.       Record No. 1467-05-4        JUDGE D. ARTHUR KELSEY
                                             AUGUST 15, 2006

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF FAUQUIER COUNTY
Jeffrey W. Parker, Judge

Jeffrey Sean Adams, Senior Assistant Public Defender, for
appellant.

Susan M. Harris, Assitant Attorney General (Robert F.
McDonnell, Attorney General, on brief), for appellee.


Robert Daniel Thomas failed to appear in general district court for a preliminary hearing

on a felony arrest warrant.  The Commonwealth charged Thomas with "willfully" failing to

appear in violation of Code § 19.2-128(B).  At his failure-to-appear jury trial, Thomas

unsuccessfully moved to strike the evidence on the ground that the evidence failed to show that

the general district court informed him of the preliminary hearing date.  The unique

circumstances of this case compel us to agree with Thomas and to reverse his conviction.

I.

On the felony failure-to-appear charge, the Commonwealth's evidence came from the

deputy sheriff who arrested Thomas and from a handwritten notation on the arrest warrant.  The

deputy testified that he and Thomas appeared in general district court on January 23, 2004.  The

deputy recalled seeing Thomas there, but did not "personally recall" whether Thomas "had to go

in front of the judge" — qualifying his earlier statement that he was "sure" Thomas must have

done so.  The deputy also recalled speaking with Thomas and being told he wanted to hire "Gene

Gunter." The deputy, however, could not recall "why the case was continued" or whether the continuance was requested by Thomas or the Commonwealth. The deputy admitted he was not certain the continued date was "given in open court." He simply assumed that, just as he had learned about the continued hearing date, so too Thomas must have known about it. The deputy also conceded he had no "personal knowledge" of "who the judge was" or "who the clerk was that day."

The arrest warrant from the general district court's file contains a handwritten notation stating: "Def. states that this is his atty. We have con't this to 2-24-04. atty is sending a letter." The notation is initialed and dated "1-23-04." A hand drawn arrow points from this notation to an adjacent box on the form bearing the heading "Attorney for the Accused." In that box appears the crossed-out name "Eugene Guner" (presumably referring to Gene Gunter) and a set of initials, which also had been crossed out. No testimony established when, by whom, or for what reason these notations were made. The record similarly says nothing about whether Thomas actually retained Gunter as counsel, whether counsel sent a letter confirming his availability for the February 24 date, or why counsel's name was crossed out on the arrest warrant.

Thomas moved to strike the evidence, arguing that it failed to demonstrate he had ever been told of the continued hearing date. The trial judge denied the motion, holding that "the court can take cognizance of a standard procedure, that the standard procedure was followed." The "standard procedure" in the general district court, the trial judge stated, was to call cases from the docket, continue them in the event the accused had not retained counsel, direct the accused to instruct counsel to write a letter of representation to the court, and, most importantly, notify the accused of the date he must reappear in court. Not doing such things in "open court," the trial judge found, would be "contrary" to the standard procedure of the general district court. On this ground, the trial judge found it unlikely the general district court would write the

- 2 -

continued hearing date (February 24) on the arrest warrant "without ever telling Mr. Thomas what they were doing." "I don't think District Court behaves in that fashion," the trial judge concluded. "That's not consistent with this court's experience in that regard . . . ." The trial judge made clear he was denying the motion to strike "based upon this court's understanding of District Court procedure," which he found to be consistent with the notations on the arrest warrant.

Thomas rested his case without presenting any evidence. The trial judge instructed the jury that it could find Thomas guilty of willfully failing to appear only if he "received timely notice of when and where to appear for a hearing" and thereafter did not "appear on the date or place specified" by the court. The trial judge, however, did not give any instructions to the jury concerning the facts he judicially noticed when denying the motion to strike. The jury returned a guilty verdict, upon which the trial judge entered the final judgment.

II.

We review lower court factfinding with the highest degree of appellate deference. We do not ask whether we, as appellate judges, believe "the evidence at the trial established guilt beyond a reasonable doubt." Stevens v. Commonwealth, 46 Va. App. 234, 249, 616 S.E.2d 754, 761 (2005) (*en banc*) (citation omitted). We ask only whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. This deferential standard applies not only to basic facts, but also to any resulting inferences so long as they do not push "into the realm of *non sequitur*." Crowder v. Commonwealth, 41 Va. App. 658, 665, 588 S.E.2d 384, 388 (2003). An inference loses its rationality only when it becomes so attenuated as to appear to stand alone, deriving none of its probative strength from the proven basic facts.

In this case, Thomas could be found guilty of violating Code § 19.2-128 only if he "received timely notice" of when and where he was supposed to appear for court. Edmonds v.

Commonwealth, 43 Va. App. 197, 200, 597 S.E.2d 210, 211-12 (2004) (citation omitted).  When

denying the motion to strike, the trial judge found — outside the presence of the jury — that a

rational *prima facie* inference of actual notice could be derived from the "standard procedure" in

general district court of informing defendants in "open court" of when and where they must next

appear.  The trial judge, however, never informed the jurors of this "standard procedure."  Nor

did he instruct them that they could consider this information as evidence in the case.[1]

Except for matters within the common knowledge and experience of jurors, adjudicative

facts judicially noticed by a trial judge cannot be imputed to a jury.  When presiding over a jury

trial, therefore, a trial judge should

> declare to the jury any [adjudicative] facts judicially known by the
> court.  In the absence of any such declaration the judicial
> knowledge in the mind of the court could not be used by the jury in
> arriving at its verdict.  The duty of the court to declare its judicial
> knowledge to the jury is generally recognized.

State v. Jones, 400 P.2d 524, 525 (Or. 1965); see also Graham v. State, 565 S.E.2d 467, 469-70

(Ga. 2002) (reversing jury verdict because "the trial court in this case did not inform the jury that

it had taken judicial notice" of an essential fact in the case); Fed. R. Evid. 201(g) (recognizing

that, in criminal cases, the "court shall instruct the jury" of any adjudicative facts subject to

judicial notice).[2]

---

[1] See generally Williams v. Commonwealth, 190 Va. 280, 292, 56 S.E.2d 537, 542 (1949) ("That a matter is judicially noted means merely that it is taken as true without the offering of evidence by the party who should ordinarily have done so. * * * But *the opponent is not prevented from disputing* the matter, if he believes it disputable." (quoting Wigmore, Evidence § 2567 (3d ed. 1946)) (emphasis in original)); see also Fed. R. Evid. 201(g) (requiring that jurors in criminal cases be instructed that they may reject judicially noticed facts).

[2] See, e.g., United States v. Dior, 671 F.2d 351, 358 n.11 (9th Cir. 1982) (recognizing that a court taking "judicial notice of an adjudicative fact" without the jury's knowledge "would cast the court in the role of a fact-finder"); State v. Hastings, 571 P.2d 1284, 1286 (Or. Ct. App. 1977) (noting that, in a criminal jury trial, "it is clear that the court must inform the jury of facts judicially noted"); cf. Person v. Miller, 854 F.2d 656, 660 (4th Cir. 1988) (holding that the trial

The failure to instruct the jurors on the "standard procedure" of the general district court left them with only the testimony of the deputy sheriff and the notation on the arrest warrant. Considered separately or together, neither was sufficient to prove actual notice. The deputy sheriff admitted he did not "personally recall" whether Thomas "had to go in front of the judge." The deputy assumed Thomas must have done so, but stated he did not specifically remember that happening. The arrest warrant notation proved the case had been continued to February 24, but said nothing about Thomas being informed of that date.

Whether the general district court's "standard procedure" was admissible or even a proper matter for judicial notice, we need not say. It is sufficient for our purposes merely to observe that, without that evidentiary predicate, the inference of actual notice had nothing upon which to rest — leaving an essential element of the crime unproven.

### III.

Given the paucity of any evidence available to the jury, sitting as factfinder, from which a rational inference of actual notice could be drawn, we reverse Thomas's conviction under Code § 19.2-128(B) for failing to appear in general district court on February 24, 2004.

Reversed.

---

court "was well within its discretion to take judicial notice" of an adjudicative fact and "by this means to lay it before the jury for consideration").