COURT OF APPEALS OF VIRGINIA

Present:  Judges Frank, McClanahan and Petty
Argued at Richmond, Virginia


HUGH LINCOLN CORDON, JR.
                                                    MEMORANDUM OPINION[*] BY
v.      Record No. 1724-08-1                        JUDGE WILLIAM G. PETTY
                                                    DECEMBER 1, 2009
COMMONWEALTH OF VIRGINIA


                FROM THE CIRCUIT COURT OF THE CITY OF HAMPTON
                              Louis R. Lerner, Judge

        Kimberly Enderson Hensley, Assistant Public Defender, for
        appellant.

        Joshua M. Didlake, Assistant Attorney General (William C. Mims,
        Attorney General, on brief), for appellee.


        Appellant, Hugh Lincoln Cordon, Jr. challenges his conviction for possessing cocaine in

violation of Code § 18.2-250, arguing that the evidence was insufficient to prove that he was in

constructive possession of the drug.  We disagree with Cordon, and, accordingly, we affirm the

conviction.

                                            I.

        Upon familiar principles, we state the evidence on appeal in the light most favorable to the

Commonwealth, granting to it all reasonable inferences fairly deducible therefrom.  See Bailey v.

Commonwealth, 38 Va. App. 794, 797, 568 S.E.2d 440, 442 (2002).  On September 29, 2007,

Cordon reported that he had been the victim of a home invasion/burglary.  When Officer Michael

Brown of the Hampton Police Department investigated the report, Cordon told him that he returned

home in the evening to find two masked men inside the home owned by his uncle.  The men

_____

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

ransacked part of the house and assaulted Cordon before they fled. Cordon reported that, although the men had stolen several things from the front part of the house, they had not taken anything from "his room."

On November 14, 2007, Detective John Baer contacted Cordon as part of his on-going investigation of the home invasion. At that time, Cordon told Baer that the only item that had been stolen was a lockbox from underneath his bed. On November 16, Detective Baer interviewed Cordon again, and again Cordon's version of the events surrounding the home invasion changed. Cordon was, however, consistent in stating that the only item that had been stolen was the lockbox that had been under his bed. Before he left, Detective Baer gave Cordon his business card.

On November 20, about seven weeks after Cordon reported the break-in, Detective Baer again returned to Cordon's home to execute a search warrant. In Cordon's bedroom, beneath a nightstand, the detective found a digital scale, a bag of white powder, and a box of .22 caliber rounds. Detective Baer also found two boxes of baking soda, a knife, glass tubes, a "wooden crusher," a torch, a marijuana pipe, and his business card in the nightstand drawer. The detective also found two bags of powder cocaine, baggies, and drug paraphernalia inside a cooler in the bedroom, as well as checks, papers, and other items bearing Cordon's name. Following the discovery of drugs and drug paraphernalia, Cordon denied living in the home or having any connection with the bedroom.

## II.

Cordon argues that the trial court did not have sufficient evidence to determine that he was in constructive possession of the cocaine located in the bedroom. Cordon reasons that the lapse of time between his complaint and the execution of the search warrant, and his denial that he lived at the home in which the drugs were found, required the trial court to determine that there was no nexus between him and the cocaine police later found in the room. Essentially, Cordon's argument

- 2 -

raises a question of credibility: that the trial court should have believed that he had no connection to the room at the time it was searched and that he was unaware of the presence of cocaine and drug paraphernalia in the room—rather than the Commonwealth's theory of the case—that Cordon falsely denied his connection to the room to avoid conviction for possessing cocaine. Cordon concludes that if the trial court believed his version of the facts, the evidence would be insufficient to support his conviction for possessing cocaine. As explained below, we disagree with Cordon and affirm his conviction.

"Sufficiency-of-the-evidence review involves assessment by the courts of whether the evidence adduced at trial could support any rational determination of guilt beyond a reasonable doubt." United States v. Powell, 469 U.S. 57, 67 (1984). As an appellate court, we review the trial court's factfinding "with the highest degree of appellate deference." Thomas v. Commonwealth, 48 Va. App. 605, 608, 633 S.E.2d 229, 231 (2006).

A reviewing court does not "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 318-19 (1979) (emphasis in original and citation omitted). Instead, we ask only "'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Maxwell v. Commonwealth, 275 Va. 437, 442, 657 S.E.2d 499, 502 (2008) (quoting Jackson, 443 U.S. at 319) (emphasis in original). These principles recognize that an appellate court is "not permitted to reweigh the evidence," Nusbaum v. Berlin, 273 Va. 385, 408, 641 S.E.2d 494, 507 (2007), because appellate courts have no authority "to preside *de novo* over a second trial," Haskins v. Commonwealth, 44 Va. App. 1, 11, 602 S.E.2d 402, 407 (2004).

This deferential standard of review "applies not only to the historical facts themselves, but the inferences from those facts as well." Crowder v. Commonwealth, 41 Va. App. 658, 663

n.2, 588 S.E.2d 384, 387 n.2 (2003).  Thus, a factfinder may "draw reasonable inferences from basic facts to ultimate facts," Haskins, 44 Va. App. at 10, 602 S.E.2d at 406 (citations omitted), unless doing so would push "into the realm of *non sequitur*," Thomas, 48 Va. App. at 608, 633 S.E.2d at 231 (citation omitted).

At trial, the Commonwealth argued that Cordon constructively possessed the cocaine. "Constructive possession may be established by evidence of acts, statements, or conduct of the accused or other facts or circumstances which tend to show that the defendant was aware of both the presence and the character of the substance and that it was subject to his dominion and control." Logan v. Commonwealth, 19 Va. App. 437, 444, 452 S.E.2d 364, 368-69 (1994) (*en banc*) (citations omitted).  Constructive possession may be established by circumstantial evidence provided such evidence excludes every reasonable hypothesis of innocence that flows from the evidence.  See Tucker v. Commonwealth, 18 Va. App. 141, 143, 442 S.E.2d 419, 420 (1994); Hamilton v. Commonwealth, 16 Va. App. 751, 755, 433 S.E.2d 27, 29 (1993).  Whether a hypothesis of innocence is reasonable is a question of fact.  See Cantrell v. Commonwealth, 7 Va. App. 269, 290, 373 S.E.2d 328, 339 (1988).

Cordon relies on our Supreme Court's opinion in Brickhouse v. Commonwealth, 276 Va. 682, 668 S.E.2d 160 (2008), to argue that the trial court was plainly wrong when it rejected his hypothesis of innocence.  In Brickhouse, police executed a search warrant on Brickhouse's home, where she lived with her aunt and uncle.  When the police arrived at her home, Brickhouse told them that "she knew why the police were there, whom they were there for, and that 'she wasn't the one doing it.'"  Id. at 684, 668 S.E.2d at 162.  The police subsequently found crack cocaine in an air-conditioning vent in an upstairs bedroom closet, and found various items of drug paraphernalia in plain view throughout the home.  Id. at 685, 668 S.E.2d at 163.  Our Supreme Court reversed Brickhouse's conviction for possession of cocaine with the intent to

distribute because the facts only showed that Brickhouse was aware of criminal activity, not that she took part in that activity herself.  Id. at 687, 668 S.E.2d at 163.

The facts of this case stand in sharp contrast to those in Brickhouse.  While it is true that Cordon, like Brickhouse, lived in a house with other people, Cordon identified the room where the drugs were found as his room that contained his bed and his belongings at the time of the original home invasion investigation.  Further, when the police executed the search warrant less than one week after Cordon identified the room as his own, the police found papers, checks, and other items bearing Cordon's name in the room.  Detective Baer also testified that he found the business card that he had given to Cordon in the nightstand drawer next to "two boxes of baking soda, a knife, a . . . couple of glass tubes, . . . a wooden crusher," and what appeared to be a "little marijuana pipe."  Indeed, it was only *after* the discovery of contraband that Cordon recanted his acknowledged connection to the room.  This is unlike Brickhouse, who disclaimed any connection to the criminal activity occurring in her home the very moment police arrived to execute a search warrant.

Moreover, "[t]he factfinder need not believe an accused's explanation and, if that explanation is not believed, may infer that the accused is lying to conceal [her] guilt."  Phan v. Commonwealth, 258 Va. 506, 511, 521 S.E.2d 282, 284 (1999).  Here, the trial court did not believe Cordon's explanation that the room was not his at the time police discovered the cocaine. The trial court was within its rights as the factfinder to infer guilt from Cordon's incredible statements.

III.

For the reasons explained in this opinion, Cordon's conviction is affirmed.

Affirmed.

- 5 -