COURT OF APPEALS OF VIRGINIA

Present:   Judges McCullough, Russell and Senior Judge Frank
Argued at Norfolk, Virginia

UNPUBLISHED

TIMOTHY MICHAEL BAIRD

                                          MEMORANDUM OPINION* BY
v.        Record No. 0384-14-1          JUDGE WESLEY G. RUSSELL, JR.
                                               MAY 12, 2015
COMMONWEALTH OF VIRGINIA


               FROM THE CIRCUIT COURT OF THE CITY OF HAMPTON
                          Christopher W. Hutton, Judge

             Charles E. Haden for appellant.

             Leah A. Darron, Senior Assistant Attorney General (Mark R.
             Herring, Attorney General, on brief), for appellee.


        Timothy Michael Baird, appellant, was charged with two counts of attempted malicious

wounding in violation of Code §§ 18.2-26 and 18.2-51, one count of shooting into an occupied

vehicle in violation of Code § 18.2-154, and two counts of use of a firearm in the commission of a

felony in violation of Code § 18.2-53.1.  The jury convicted him on the two counts of use of a

firearm in the commission of a felony and acquitted him of the other charges.  On appeal, he

contends that the evidence was insufficient to sustain his convictions and that the trial court erred in

denying his motion for a mistrial.  For the reasons that follow, we affirm the appellant's convictions.

                                    BACKGROUND

        "'Under well-settled principles of appellate review, we consider the evidence presented at

trial in the light most favorable to the Commonwealth, the prevailing party below.'"  Smallwood

v. Commonwealth, 278 Va. 625, 629, 688 S.E.2d 154, 156 (2009) (quoting Bolden v.

---

        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Commonwealth, 275 Va. 144, 148, 654 S.E.2d 584, 586 (2008)). This principle requires us to "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." Parks v. Commonwealth, 221 Va. 492, 498, 270 S.E.2d 755, 759 (1980) (emphasis and internal quotation marks omitted).

So viewed, the evidence establishes that, at approximately 9:15 p.m. on September 30, 2012, Tyler Paden was driving on King Street in Hampton when he observed a silver Dodge Charger following very closely behind him as he entered the ramp onto Mercury Boulevard. Paden "brake checked" the Charger by tapping his brakes because he does not like "people tailgating" him. Paden testified that the other vehicle slowed, but eventually closed in on him again as he was traveling on Mercury Boulevard. The vehicle pulled alongside Paden's vehicle, and Paden made an obscene gesture through his open window. The two cars continued to travel side by side with the back window of the Charger next to Paden's window. Paden stated that appellant was "hanging out" of the back passenger side window and demanding Paden get off the road. Appellant then pulled up his shirt revealing a handgun with "a black handle with like the chrome, sort of a stainless slide on it." Appellant then "jiggle[d]" the gun with his left hand and told Paden he was going to kill him. Paden responded, "You ain't gonna do [nothing] with that . . . " and turned back to face the road. Paden then heard a gunshot coming from his left side, and the Charger sped off.

Paden's fiancée, Sarah Matthews, was in the passenger seat. She also identified appellant as the individual in the back of the Charger. She testified that after the tailgating, she observed appellant hanging out of the back window, using profanity, and telling Paden he was going to kill him. She also saw the gun when appellant pulled up his shirt and then held the gun in his left hand. Matthews recalled seeing appellant aim the gun at the car. She testified to seeing the muzzle flash and smelling gunpowder after appellant discharged the gun. Matthews stated she got a "very good

look" at appellant because she was "staring at him the whole time they were yelling." When asked by the prosecutor, "Were you looking at him when he pulled the trigger to the gun?" Matthews answered, "I was."

Paden and Matthews each wrote down the Charger's license plate number. Paden drove to a gas station and called the police. Paden recognized appellant from having gone to daycare and high school with him. Because Paden immediately recognized appellant, he was able to quickly find appellant's profile on Facebook.

Hampton Police Detective Christopher Lyon responded to Paden's call. Paden showed him appellant's Facebook page and provided Lyon with the Charger's license plate number. Lyon was able to identify appellant and match the license plate information with a 2006 Dodge. He then obtained a search warrant for appellant's address in Hampton. Lyon proceeded to that address and found a silver Dodge Charger parked outside. There were several people standing next to the vehicle, and one of them activated the car's alarm. Appellant then exited the residence and was immediately arrested and placed in handcuffs. In a subsequent search of appellant's home, Lyon recovered a silver .357 caliber revolver from inside a washing machine and located a Smith and Wesson nine millimeter semiautomatic black and silver handgun from underneath the mattress in appellant's bedroom.

Lyon transported appellant to police headquarters and took a statement from him. Lyon noticed that appellant used his left hand to sign his name to a form and observed that appellant's hands were clean and "red and they appeared to be almost raw." Appellant requested that Lyon perform a gunshot residue test on him, which Lyon did. Lyon testified that although he had not discharged a firearm within two months, he had handled his service weapon. He also acknowledged that he did not "bag" appellant's hands upon arresting him.

At trial, the court accepted Keena Zitkovich as an expert in the field of primer residue analysis.[1] Zitkovich explained that when a firearm is discharged, the elements of lead, antimony, and barium create a particulate that expels from the firearm and settles on surrounding surfaces. She stated that the residue can remain on someone's hands for up to six hours. Although she acknowledged that she cannot determine how primer residue gets on someone's hands, possible explanations include discharging a firearm, being in close proximity to the discharge of a firearm, or coming into contact with another object containing primer residue.

Zitkovich testified that one particle "highly specific to primer residue" was found on a sample taken from appellant's left hand and one particle "indicative of primer residue" was found on each hand. Zitkovich identified Commonwealth's exhibit number three as being the primer residue collection Lyon had used and identified Commonwealth's exhibit number four as the certificate of analysis that contained the results of the testing.

The Commonwealth indicated that Zitkovich was its last witness. At that time, the trial court excused the jury from the courtroom in order to take up the admission of exhibits that previously had been marked for identification. The Commonwealth did not seek admission of a statement that previously had been identified as exhibit number one. Over appellant's objection, the Court admitted exhibit number two, which was one of the guns that Lyon had recovered from the residence.

When the trial court turned to exhibits three and four, appellant objected. In addition to the pretrial objections, appellant argued that the Commonwealth had failed to establish the chain of custody regarding the gunshot residue test kit. After some argument by counsel, the trial court

---

[1] Prior to trial, appellant moved to preclude any evidence of primer residue or testimony of a forensic analyst. He argued that the results in this case are unreliable and challenged the collection procedures as "questionable." Prior to trial, the trial court overruled the motion. At trial, prior to Zitkovich's testimony, appellant again raised the issue argued in his pretrial motion.

stated it would take a recess and that the parties should be prepared to discuss Code §§ 19.2-187 and 19.2-187.01 at the conclusion of the recess.

After the recess, counsel for the parties continued to argue the issue. Because the hour was late, the trial court decided to recess for the evening, stating that "this is going to take longer than I'm comfortable holding the jury up. I'm going to bring them out and send them home . . . ."

When court reconvened the next day, the parties resumed the arguments about exhibits three and four. At that time, the Commonwealth withdrew exhibit three, but continued to seek admission of exhibit four, the certificate of analysis that reported the results of the gunshot residue test. Ultimately, the trial court denied the admission into evidence of exhibit four.

Based on the trial court's ruling, appellant made "a motion to strike the testimony of Miss Zitkovich." The trial court granted that motion and stated that it would "tell the jury to disregard the testimony of Miss Zitkovich." The Commonwealth then asked for its exception to be noted for the record. The trial court noted the exception and then, *sua sponte*, struck those portions of Lyon's testimony regarding "the taking of the GSR kit itself."

After additional discussions regarding exactly which portions of Lyon's testimony the trial court had stricken, the trial court asked appellant's counsel, "[D]o you have any other motions before we bring the jury back?" Appellant's counsel responded, "[n]o," noting that "obviously, I'll have motions after the government rests . . . ."

The trial court confirmed that the Commonwealth had rested its case. Appellant's counsel then stated that "I do have motions to strike, your Honor." Appellant's counsel argued that the Commonwealth's evidence was insufficient to establish malice, and therefore, moved "to strike all five indictments." The Commonwealth responded regarding each indictment, and appellant's counsel was permitted rebuttal argument.

The trial court denied the motion to strike. After the trial court had denied the motion to strike, appellant, for the first time, requested a mistrial, stating that "the [stricken] testimony of the forensic expert[], Miss Zitkovich, and the [stricken] testimony of Detective Lyons [sic] is so prejudicial" that a curative instruction would not be sufficient. The trial court denied the motion for a mistrial, finding that a curative instruction would be "sufficient for the jury to be able to exclude that testimony" from its deliberative process.

At the close of all the evidence, appellant renewed both the motion to strike and the motion for a mistrial. The trial court denied the renewed motions.

Before sending the jury to deliberate, the trial court gave cautionary instructions that the jury was not to consider any evidence regarding the gunshot residue.[2] After deliberating, the jury convicted appellant on the two counts of use of a firearm in the commission of a felony and acquitted him of the other charges.

_____

[2] The first such instruction was an oral direction from the trial court regarding the specific evidence to be disregarded. Specifically, the trial court instructed the jury as follows:

> The testimony of the forensic expert is stricken. You are not to consider the testimony of the forensic expert. The certificate about which she testified is excluded. . . . [A]ny consideration of the gunshot residue evidence is excluded. Without saying anything else, I solicit this. If you do not understand that, please raise your hand.

No juror indicated a lack of understanding of the trial court's direction. The court requested a showing of hands if any member of the jury did not understand the curative instruction. No juror responded that he or she did not understand the instruction. Additionally, the trial court also gave, both orally and in writing, the standard instruction on stricken evidence. VMJI No. 2.360 (Criminal) ("You must not consider any matter that was rejected or stricken by the Court. It is not evidence and should be disregarded.").

ANALYSIS

Sufficiency of the Evidence

Appellant argues the trial court erred in denying his motion to strike the Commonwealth's evidence. Specifically, appellant contends that the evidence failed to prove that he discharged a firearm in the direction of Paden's car.

Under well-settled principles, the burden is on the Commonwealth to prove every essential element of the offense beyond a reasonable doubt. Williams v. Commonwealth, 57 Va. App. 341, 351, 702 S.E.2d 260, 265 (2010). "In a criminal case, the defendant is entitled to an acquittal, unless his guilt is established beyond a reasonable doubt." Savage v. Commonwealth, 84 Va. 582, 585, 5 S.E. 563, 564 (1888).

In reviewing the sufficiency of the evidence, we note that we examine a factual finding "with the highest degree of appellate deference." Thomas v. Commonwealth, 48 Va. App. 605, 608, 633 S.E.2d 229, 231 (2006). The only "relevant question is, after reviewing the evidence in the light most favorable to the prosecution, whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Sullivan v. Commonwealth, 280 Va. 672, 676, 701 S.E.2d 61, 63 (2010) (emphasis added).

This deferential appellate standard "applies not only to the historical facts themselves, but the inferences from those facts as well." Clanton v. Commonwealth, 53 Va. App. 561, 566, 673 S.E.2d 904, 907 (2009) (*en banc*) (internal quotation marks omitted). "Thus, a factfinder may 'draw reasonable inferences from basic facts to ultimate facts,'" Tizon v. Commonwealth, 60 Va. App. 1, 10, 723 S.E.2d 260, 264 (2012) (quoting Haskins v. Commonwealth, 44 Va. App. 1, 10, 602 S.E.2d 402, 406 (2004)), "unless doing so would push 'into the realm of *non sequitur*,'" id. (quoting Thomas, 48 Va. App. at 608, 633 S.E.2d at 231).

Appellant argues that the evidence failed to prove beyond a reasonable doubt that he actually discharged a weapon or that he did so in the direction of Paden's vehicle. He bases his argument, in part, on the lack of corroborating physical evidence and the jury's acquittal of the underlying attempted malicious wounding charges.

The jury accepted the testimony of Matthews and Paden. "The credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear that evidence as it is presented." Sandoval v. Commonwealth, 20 Va. App. 133, 138, 455 S.E.2d 730, 732 (1995). The trier of fact is not required to accept a witness' testimony, but instead is free to "rely on it in whole, in part, or reject it completely." Rollston v. Commonwealth, 11 Va. App. 535, 547, 399 S.E.2d 823, 830 (1991).

Matthews heard appellant tell Paden he was going to kill Paden, she observed the gun in appellant's left hand, and she watched him aim the gun at the car and discharge the weapon. Matthews saw the muzzle flash and smelled gunpowder. She confirmed appellant's photograph on Facebook and identified appellant at trial with certainty. While the uncorroborated testimony of one witness may be sufficient to sustain a verdict of guilty, Bryant v. Commonwealth, 10 Va. App. 421, 427, 393 S.E.2d 216, 220 (1990), Matthews' testimony here is corroborated by other evidence.

Paden also saw the gun in appellant's left hand and heard a gunshot coming from his left where appellant was situated. Detective Lyon observed appellant sign his name with his left hand, the same hand he used to fire the gun. Clearly, the evidence supports a finding that appellant discharged the firearm towards the car.

Appellant also suggests that, even if the jury could have concluded that he fired the weapon, the evidence did not exclude the possibility that he "discharged the firearm harmlessly" and never "intended to harm, maim, disfigure, disable or kill . . . ." We find no merit in this

argument. A gun is a deadly weapon, and "[m]alice may be inferred from the deliberate use of a deadly weapon . . . ." Avent v. Commonwealth, 279 Va. 175, 201-02, 688 S.E.2d 244, 259 (2010) (quotation marks and citation omitted). Furthermore, appellant shouted that he was going to kill Paden. These facts were more than sufficient to allow the jury to reasonably infer both malice and a specific intent to kill or otherwise harm the people in Paden's car.

Appellant further suggests that we should not give our usual deference to the jury as factfinder because it convicted him of the use of a firearm charges and acquitted him of the underlying felonies. While appellant's characterization of the verdicts reached by the jury as "inconsistent and illogical" may be fair, it is without legal significance. As we have noted previously,

> [i]n making this argument, appellant ignores our longstanding case law regarding inconsistent jury verdicts. Jury verdicts may appear inconsistent because the jury has elected through mistake, compromise, or lenity to acquit or to convict of a lesser offense for one charged crime that seems in conflict with the verdict for another charged offense. Despite the apparent inconsistency of a verdict, courts may uphold inconsistent verdicts, provided that the evidence supports the verdict challenged on appeal.

Kovalaske v. Commonwealth, 56 Va. App. 224, 233, 692 S.E.2d 641, 646 (2010) (internal quotation marks and citations omitted). See also Reed v. Commonwealth, 239 Va. 594, 391 S.E.2d 75 (1990). Because the evidence here is more than sufficient to support the convictions at issue, the fact that the jury rendered inconsistent verdicts is of no import.

Mistrial

Appellate courts "review a challenge to a circuit court's denial of a mistrial motion under established principles. The decision whether to grant a mistrial motion is a matter submitted to the circuit court's sound discretion." Lewis v. Commonwealth, 269 Va. 209, 213, 608 S.E.2d 907, 909 (2005) (citations omitted). Before reaching the substance of a challenge to a denial of a motion for a mistrial, we first must determine if the motion was timely made.

- 9 -

The Virginia Supreme Court repeatedly has held that "if a defendant wishes to take advantage on appeal of some incident he regards as objectionable enough to warrant a mistrial, he must make his motion timely or else be deemed to have waived his objection." Yeatts v. Commonwealth, 242 Va. 121, 137, 410 S.E.2d 254, 264 (1991) (citations omitted). To be timely, a motion for mistrial must be made "[w]hen a party has full knowledge of circumstances justifying a mistrial . . . ." Crockett v. Commonwealth, 187 Va. 687, 706-07, 47 S.E.2d 377, 386 (1948). A party with knowledge of the circumstances sufficient to justify a mistrial may not hold the issue in reserve only to raise it if a motion to strike is unsuccessful. See Hall v. Commonwealth, 213 Va. 736, 737, 195 S.E.2d 882, 883 (1973) (finding that a motion for a mistrial first made after denial of a motion to strike is untimely).

Here, appellant arguably had knowledge of the circumstances supporting his motion for a mistrial at the conclusion of Zitkovich's testimony. The predicate for the motion for a mistrial was the failure of the Commonwealth to establish the chain of custody regarding the gunshot residue test kit necessary to allow for the admission of the test results and testimony about them. Appellant clearly was aware of this failure as he argued that exhibits three and four should not be admitted into evidence.

Appellant was certainly aware of the issue the next day when the exhibits were not admitted into evidence and he moved the trial court to strike Zitkovich's testimony. The issue was readily apparent when the trial court granted the motion striking Zitkovich's testimony and, *sua sponte*, struck the portions of Lyon's testimony related to gunshot residue. There was ample opportunity to move for a mistrial during the colloquy addressing the extent to which Lyon's testimony would be stricken, yet appellant remained silent.

Having resolved the issues related to Lyon's testimony, the trial court made a specific inquiry of appellant as to whether he had any motions at that time. Appellant responded "[n]o"

and noted that any motions would be made at the conclusion of the Commonwealth's case. When informed that the Commonwealth had rested, appellant still did not move for a mistrial, but rather, moved to strike the Commonwealth's case regarding all five indictments. Only after lengthy argument on the motion to strike and learning that the trial court had denied the motion to strike did the appellant move for a mistrial.

We find that his motion was not timely. A party must move for a mistrial as soon as he is aware of the circumstances justifying the motion; he simply cannot hold such an issue in reserve to be deployed only if a trial court denies a dispositive motion. Because appellant's motion for a mistrial was untimely, we do not reach the substance of his claim of error on this issue.

## CONCLUSION

For the foregoing reasons, we find the evidence was sufficient to allow the jury to convict appellant of two counts of use of a firearm in the commission of a felony. We further find that appellant waived any claim he may have had for a mistrial by not timely requesting that relief. Accordingly, appellant's convictions are affirmed.

<u>Affirmed.</u>