COURT OF APPEALS OF VIRGINIA

Present: Judges Russell,[*] Friedman and Callins
Argued at Salem, Virginia

**PUBLISHED**

TIMOTHY JAMES SUHAY

                 OPINION BY
v.   Record No. 0664-21-3      JUDGE DOMINIQUE A. CALLINS
                  JULY 19, 2022

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF ROCKINGHAM COUNTY
Thomas J. Wilson, IV, Judge

A. Hunter Jackson (Evans Oliver PLC, on brief), for appellant.

Rosemary V. Bourne, Senior Assistant Attorney General (Jason S.
Miyares, Attorney General, on brief), for appellee.


Timothy James Suhay appeals his convictions for three counts of electronic solicitation of

a minor, in violation of Code § 18.2-374.3(C). Suhay contends that the circuit court erred in

denying his request for a deferred disposition under Code § 19.2-303.6, which permits a trial

court to defer adjudication of guilt for a criminal defendant who has been diagnosed with autism

spectrum disorder if the court finds by clear and convincing evidence that the defendant's

criminal conduct was caused by or had a direct and substantial relationship to the disorder. We

hold that the circuit court did not err in finding that Suhay's solicitation of a minor was not

caused by, nor had a direct and substantial relationship to, his autism spectrum disorder and that

any error by the circuit court in applying the requirements of Code § 19.2-303.6 was harmless.

Thus, we affirm the judgment of the circuit court.

---

[*] Justice Russell participated in the hearing and decision of this case prior to his investiture as a Justice of the Supreme Court of Virginia.

BACKGROUND

In April 2018, the grandmother of then eleven-year-old S.H. reported to the City of Harrisonburg Police Department that she had found sexually explicit communications and photographs on a tablet computer that S.H. had been using. Harrisonburg Police Detective Greg Miller interviewed S.H. and discovered that she had been communicating with Suhay on the social media platforms Instagram and Google Hangouts. After obtaining a search warrant for both Suhay's and S.H.'s social media accounts, Detective Miller discovered a ninety-eight-page Google Hangouts chat log. The chat log revealed that Suhay, then twenty-four years old, had asked S.H. to send him nude photographs and videos of herself, had suggested to S.H. that they perform various explicit sexual acts, including sexual intercourse, had asked S.H. to fondle her genitalia on camera for him, and had sent S.H. a photograph of his exposed genitalia. During their two-day chat, Suhay repeatedly referred to S.H. as "babe" and also told her that she was "my girl" and was his girlfriend.

Several months later, Detective Miller and Special Agent Tami Ketchem approached Suhay outside his work location at a plastics factory in Charlotte, North Carolina. After being given a *Miranda* warning, Suhay agreed to answer their questions. Upon being told S.H.'s full name, Suhay responded that he had met S.H. on Instagram and that "I should have not talked bad to her." Suhay then admitted that he had sent a "dirty picture" to S.H. and that "I know I'm in trouble for saying that." He volunteered, "If there's a way that I can undo everything and not get in trouble for it, I would." Detective Miller then showed Suhay the Google Hangouts chat log and told Suhay that "when you look at her pictures of her face and things like that, there's no question how young she is," to which Suhay responded, "Yeah . . . it should never have gotten to that point." When asked if he ever thought that S.H. was an adult, Suhay responded, "No. I knew she was younger." Although Suhay first stated he believed S.H. to be thirteen or fourteen

years old, he later admitted that S.H. had "said she was ten, eleven." When asked by Special

Agent Ketchem whether he knew that S.H. was ten or eleven years old while chatting with her,

Suhay answered, "Yes, ma'am." Suhay was then shown the picture of his exposed genitalia that

he had sent to S.H., and he admitted that he had sent the picture and then signed and dated it.

Suhay was ultimately arrested and extradited to Virginia.

Suhay was charged with twelve counts of electronic solicitation of a minor under Code

§ 18.2-374.3(C),[1] nine of which were *nolle prossed*. Suhay's arraignment was held on January

11, 2021, in the Rockingham County Circuit Court. During the arraignment, defense counsel

withdrew his motion to suppress the statements made by Suhay during his police interview, and

Suhay entered *Alford* pleas to his three charges. After hearing the Commonwealth's proffer of

evidence, the circuit court found that Suhay's guilty pleas were freely, voluntarily, and

---

[1] Code § 18.2-374.3(C) provides, in relevant part:

> It is unlawful for any person 18 years of age or older to use a
> communications system, including but not limited to computers or
> computer networks or bulletin boards, or any other electronic
> means, for the purposes of soliciting, with lascivious intent, any
> person he knows or has reason to believe is a child younger than
> 15 years of age to knowingly and intentionally:
>
> 1. Expose his sexual or genital parts to any child to whom he is not
> legally married or propose that any such child expose his sexual or
> genital parts to such person;
>
> 2. Propose that any such child feel or fondle his own sexual or
> genital parts or the sexual or genital parts of such person or
> propose that such person feel or fondle the sexual or genital parts
> of any such child;
>
> 3. Propose to such child the performance of an act of sexual
> intercourse, anal intercourse, cunnilingus, fellatio, or anilingus or
> any act constituting an offense under § 18.2-361; or
>
> 4. Entice, allure, persuade, or invite any such child to enter any
> vehicle, room, house, or other place, for any purposes set forth in
> the preceding subdivisions.

intelligently made and that the Commonwealth's evidence was sufficient to convict Suhay for his three charges. The circuit court did not immediately enter an adjudication of guilt, however, because defense counsel notified the court that he intended to seek a deferred adjudication under the recently enacted Code § 19.2-303.6.[2] The new statute permits a trial court to grant a deferred disposition to a criminal defendant who has been diagnosed with autism spectrum disorder and whose criminal conduct was caused by or had a direct and substantial relationship to the disorder. The circuit court continued the matter to April 26, 2021, for a sentencing hearing to determine whether Suhay should be granted a deferred disposition.

At Suhay's sentencing hearing, defense counsel called Dr. Lucy Guarnera, Ph.D., a licensed clinical psychologist who had diagnosed Suhay with Level 1 autism spectrum disorder ("ASD") as part of a court-ordered psychological evaluation. Dr. Guarnera testified that a person with Level 1 ASD is classified as "requiring support," that Suhay displayed the two primary symptoms of ASD, which are "persistent deficits in social communication and social interaction" and "restricted, repetitive patterns of behavior, interests, or activities," that, because Suhay was often teased by his brothers and peers, he would spend more time with younger children who were closer to his development level, that Suhay had "trouble understanding social cues indicating levels of interest in relationships," that Suhay's ASD caused him to have difficulties in transitioning to living independently from his parents, that Suhay's excessive online social media use was typical of a person with ASD, that Suhay's interactions with S.H. were indicative of his ASD because he immediately thought of her as his girlfriend and "considered their relationship to be more serious and more meaningful than it really was," and that Suhay's ASD could have

_____

[2] Code § 19.2-303.6, titled "Deferred disposition in a criminal case; persons with autism or intellectual disabilities," was approved by the General Assembly on April 9, 2020 and became effective on July 1, 2020. 2020 Va. Acts ch. 1004. To date, no Virginia appellate court has interpreted or applied this statute.

caused him to be unaware of S.H.'s age because "things that would be completely obvious to another person, that could impact on the victim's age . . . may not be obvious to someone with an autism spectrum disorder like Mr. Suhay."

On cross-examination, Dr. Guarnera conceded that Level 1 ASD is the mildest form of ASD, that her diagnosis of Suhay's ASD in November 2018 was the first time that Suhay had ever been diagnosed with ASD, that Suhay had never sought mental health care for any of his ASD symptoms until after his current criminal charges, that Suhay was not taking any anti-psychotic or mental health related medications to treat his ASD, that she remembered that Suhay had stated during his police interview that "he thought that [S.H.] was thirteen or fourteen and eventually learned that she was super young, like ten or eleven," that ASD is not a cognitive disorder that would have caused Suhay to have impaired intelligence in any way, that she was aware that Suhay had earned a degree at a community college with a 3.5 grade point average while working full-time at a plastics factory, where he had worked for over five years, and that she had stated in her written psychological evaluation of Suhay that "[p]articularly given the weight of the current evidence, that Mr. Suhay was aware of S.H.'s young age early in their interactions."

During the Commonwealth's closing argument, the Commonwealth's attorney stated that "even if the Court feels that the criminal conduct was caused by or had a direct substantial relationship to [Suhay's] disorder . . . it is still in the Court's discretion whether or not to defer this disposition. [Code § 19.2-303.6] says the Court may, not that the Court shall [grant a deferred disposition]." The Commonwealth's attorney added that "The Court may defer, the Court does not have to defer. We ask the Court to consider the position of the attorney for the Commonwealth and the views of the victim in this case." The circuit court noted that "[Code § 19.2-303.6] is a new statute and this is the first time that this statute has been applied in this

Court" and concluded that it would be taking the matter under advisement for four weeks before announcing its final decision.

At the final hearing on June 3, 2021, the circuit court denied Suhay's request for a deferred disposition under Code § 19.2-303.6, stating: "After reviewing the file in its entirety, I do not believe that the underlying mental health issue was the cause or established the direct or substantial relationship between the Autism and the actions." The court further stated: "I am also taking into consideration the positions of both the Commonwealth and the victim, as the statute requires. I am not going to do a deferral under [Code § 19.2-303.6]." The court entered adjudications of guilt for Suhay's three charges and imposed an active sentence of ten years' imprisonment. This appeal followed.

ANALYSIS

On appeal, Suhay contends that the circuit court erred in ruling that he did not satisfy the statutory requirements of Code § 19.2-303.6. Suhay specifically argues that the circuit court erred by prematurely considering the positions of the Commonwealth's attorney and views of the victim when determining whether the factual elements of Code § 19.2-303.6 were satisfied. He further argues that the circuit court also erred in finding that Suhay's criminal conduct was not caused by, nor had a direct and substantial relationship to, his ASD.

I. Statutory Interpretation of Code § 19.2-303.6

"Issues of statutory construction are questions of law which are reviewed *de novo*." *Fletcher v. Commonwealth*, 72 Va. App. 493, 502 (2020). "[W]hen analyzing a statute, we must assume that 'the legislature chose, with care, the words it used when it enacted the relevant statute, and we are bound by those words as we interpret the statute.'" *City of Virginia Beach v. ESG Enters., Inc.*, 243 Va. 149, 153 (1992) (quoting *Barr v. Town & Country Props.*, 240 Va. 292, 295 (1990)). "Words in a statute are to be construed according to their ordinary meaning,

given the context in which they are used." *Grant v. Commonwealth*, 223 Va. 680, 684 (1982).

"The legal maxim, *noscitur a sociis*, instructs that 'a word takes color and expression from the

purport of the entire phrase of which it is a part, and . . . must be read in harmony with its

context.'" *Commonwealth v. Wallace*, 29 Va. App. 228, 233 (1999) (alteration in original)

(quoting *Turner v. Commonwealth*, 226 Va. 456, 460 (1983)).

Code § 19.2-303.6(A) provides, in relevant part, that:

> In any criminal case, except a violation of § 18.2-31, an act of violence as defined in § 19.2-297.1, or any crime for which a deferred disposition is provided for by statute, upon a plea of guilty, or after a plea of not guilty, and the facts found by the court would justify a finding of guilt, the court *may*, if the defendant has been diagnosed by a psychiatrist or clinical psychologist with (i) an autism spectrum disorder as defined in the most recent edition of the Diagnostic and Statistical Manual of Mental Disorders published by the American Psychiatric Association or (ii) an intellectual disability as defined in § 37.2-100 and *the court finds by clear and convincing evidence that the criminal conduct was caused by or had a direct and substantial relationship to the person's disorder or disability*, without entering a judgment of guilt and with the consent of the accused, *after giving due consideration to the position of the attorney for the Commonwealth and the views of the victim*, defer further proceedings and place the accused on probation subject to terms and conditions set by the court.

(Emphases added).

Code § 19.2-303.6(B) further provides that:

> Deferred disposition shall be available to the defendant even though he has previously been convicted of a criminal offense, been adjudicated delinquent as a juvenile, or had proceedings deferred and dismissed under this section or under any other provision of law, unless, *after having considered the position of the attorney for the Commonwealth, the views of the victims*, and any evidence offered by the defendant, the court finds that deferred disposition is inconsistent with the interests of justice.

(Emphasis added).

The statute's use of the word "may" in stating that "the court may . . . defer further proceedings" indicates that the decision whether to grant a deferred disposition is left to the sound discretion of the trial court. *See Masters v. Hart*, 189 Va. 969, 979 (1949) ("Unless it is manifest that the purpose of the legislature was to use the word 'may' in the sense of 'shall' or 'must,' then 'may' should be given its ordinary meaning—permission, importing discretion."). However, the trial court may exercise its discretion to grant a deferred disposition only if two factual elements are satisfied: (1) "the defendant has been diagnosed by a psychiatrist or clinical psychologist with (i) an autism spectrum disorder as defined in the most recent edition of the Diagnostic and Statistical Manual of Mental Disorders published by the American Psychiatric Association or (ii) an intellectual disability as defined in § 37.2-100," and (2) "the court finds by clear and convincing evidence that the criminal conduct was caused by or had a direct and substantial relationship to the person's disorder or disability." Code § 19.2-303.6(A).

We interpret the phrase "after giving due consideration to the position of the attorney for the Commonwealth and the views of the victim" in Code § 19.2-303.6(A) as a factor that the trial court should consider only regarding its overall discretionary decision whether to grant a deferred disposition. The context of the phrase and its location within the statute indicates that it was meant to pertain to arguments, concerns, and other considerations that, while not relevant to the trial court's factual findings under Code § 19.2-303.6(A), may nevertheless help inform the court's decision whether to grant a deferred disposition. We note that a similar phrase appears in Code § 19.2-303.6(B)—"after having considered the position of the attorney for the Commonwealth, [and] the views of the victims"—where the phrase is similarly used, not in relation to the trial court's factfinding function, but in relation to the court's determination of whether granting a deferred disposition for a defendant who "has previously been convicted of a criminal offense, been adjudicated delinquent as a juvenile, or had proceedings deferred and

- 8 -

dismissed under [Code § 19.2-303.6] or under any other provision of law" would be "inconsistent with the interests of justice."[3]

Our baseline interpretation of Code § 19.2-303.6 raises certain important implications. Since the decision to grant a deferred disposition is ultimately left to the discretion of the trial court, the necessary implication is that, even if the two factual elements of Code § 19.2-303.6(A) have been satisfied, the trial court may still, in its discretion, choose to deny a defendant's request for a deferred disposition. Conversely, if either of the two factual elements of Code § 19.2-303.6(A) have *not* been satisfied, then the necessary implication is that the trial court *must* deny a defendant's request for a deferred disposition and has no discretion to do otherwise. Moreover, since the trial court at this point would no longer have a right to exercise its discretionary function, the position of the Commonwealth's attorney and the views of the victim—which, as we have explained, are only relevant to the trial court's discretionary decision whether to grant a deferred disposition—are effectively rendered irrelevant. The trial court must deny the defendant's request for a deferred disposition, regardless of the position of the Commonwealth's attorney and the views of the victim.

### II. Application of Code § 19.2-303.6 to Suhay

Under Code § 19.2-303.6(A), a trial court may grant a deferred disposition to a criminal defendant only if "the court finds by *clear and convincing evidence* that the criminal conduct was caused by or had a direct and substantial relationship to the person's disorder or disability." (Emphasis added). "Clear and convincing evidence is that degree of proof which produces in the mind of the trier of facts a firm belief or conviction upon the allegations sought to be established. It is intermediate proof, more than a mere preponderance but less than proof beyond a reasonable

---

[3] Suhay had never been convicted of any other crimes, adjudicated delinquent as a juvenile, or had proceedings deferred and dismissed under Code § 19.2-303.6 or any other statute prior to his current convictions. Thus, Code § 19.2-303.6(B) is not applicable to him.

doubt." *Oberbroeckling v. Lyle*, 234 Va. 373, 379 (1987). The clear and convincing evidence standard "cannot be met with evidence that leaves 'competing inferences "equally probable.""" *In re Brown*, 295 Va. 202, 227 (2018) (quoting *Edmonds v. Edmonds*, 290 Va. 10, 22 (2015)). Rather, "the persuasive quality of clear-and-convincing evidence must establish that 'the thing to be proved is highly probable or reasonably certain.'" *Id.* (quoting *Black's Law Dictionary* 674 (10th ed. 2014)).

"In Virginia, the factfinding of a lower court receives 'the highest degree of appellate deference.'" *Harper v. Commonwealth*, 49 Va. App. 517, 521 (2007) (quoting *Thomas v. Commonwealth*, 48 Va. App. 605, 608 (2006)). "As an appellate court, we are not permitted to reweigh the evidence." *Id.* (quoting *Nusbaum v. Berlin*, 273 Va. 385, 408 (2007)). "Presuming factual findings to be correct, we reverse 'only if the trial court's decision is "plainly wrong or without evidence to support it."'" *Id.* (quoting *Kelly v. Commonwealth*, 41 Va. App. 250, 257 (2003) (*en banc*)). "[O]n appeal, we must view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the prevailing party at trial." *Evaluation Rsch. Corp. v. Alequin*, 247 Va. 143, 147 (1994).

Suhay contends that the circuit court erred in finding that his solicitation of S.H. was not caused by, nor had a direct and substantial relationship to, his ASD. He points to Dr. Guarnera's testimony at his sentencing hearing, where she testified that his ASD caused him to have difficulty developing, maintaining, and understanding social and romantic relationships, that Suhay throughout his life would spend more time with younger children because they were closer to his development level, that Suhay's ASD caused him to turn to online social media to form relationships that he could not form in real life, that Suhay's ASD made him unable to differentiate between different levels of closeness in relationships, causing him to take his relationship with S.H. much more seriously than it was, and that S.H.'s young age would not

have been obvious to Suhay because his ASD would have affected his ability to properly determine S.H.'s age.

In response, the Commonwealth points to the fact that Suhay was only diagnosed with Level 1 ASD, the mildest form of autism spectrum disorder, that Suhay had never been diagnosed with ASD prior to his current criminal charges, that Suhay was intelligent enough to earn an associate's degree at a community college with a 3.5 grade point average and work at the same plastics factory for five years, that Dr. Guarnera had concluded in her psychological evaluation of Suhay that "there is no indication that Mr. Suhay has any cognitive problems that would have prevented him from understanding the factual illegality of sexual solicitation of a minor," that during Suhay's police interview, he stated that he knew he could "get in trouble" for his sexual interactions with S.H., and that Dr. Guarnera had written in her psychological evaluation of Suhay that he "was aware of S.H.'s young age early in their interactions."

Having reviewed the entire record, we conclude that the circuit court did not err in finding that Suhay's solicitation of S.H. was not caused by, nor had a direct and substantial relationship to, his ASD. The record contains a substantial amount of evidence showing that Suhay was an intelligent individual who was fully aware that S.H. was a minor, knew that his sexual interactions with her were illegal, and yet still solicited her for sexual activity. We are particularly persuaded by Suhay's police interview, where he admitted that he knew S.H. was ten or eleven years old when engaging in sexually explicit communications with her, as well as clearly expressed his knowledge of and regret for the wrongfulness of his actions. Suhay's understanding of his relationship with S.H., both with respect to her age and to his knowledge of the illegal nature of his interactions with her, contradicts the social "deficit" Dr. Guarnera testified as symptomatic of Suhay's ASD and supports the circuit court's conclusion of no causal connection between Suhay's criminal conduct and his ASD. Despite Dr. Guarnera's testimony

in his favor, the evidence against Suhay was, at a minimum, sufficient to create equally competing inferences as to whether his criminal conduct was caused by or had a direct and substantial relationship to his ASD. Thus, Suhay would have failed to carry his burden of establishing by clear and convincing evidence that his criminal conduct was caused by or had a direct and substantial relationship to his ASD. *See In re Brown*, 295 Va. at 227 (explaining that the clear and convincing evidence standard "cannot be met with evidence that leaves 'competing inferences "equally probable"'" (quoting *Edmonds*, 290 Va. at 22).[4]

Moreover, we find no indication in the record that the circuit court's factual findings were tainted by prematurely considering the position of the attorney for the Commonwealth and the views of the victim. Absent clear evidence to the contrary, "[a] trial court is presumed to apply the law correctly," *Shenk v. Shenk*, 39 Va. App. 161, 169 (2002), and is "presumed to have considered the presented evidence 'only in its permissible context,'" *Breeden v. Commonwealth*, 43 Va. App. 169, 188 (2004) (quoting *Vanhook v. Commonwealth*, 40 Va. App. 130, 135 (2003)).[5] We do not construe the circuit court's statement in its final ruling that it was "also taking into consideration the positions of both the Commonwealth and the victim, as the statute requires" as indicating that the court prematurely considered the position of the

---

[4] Even if Suhay had established by clear and convincing evidence that his solicitation of S.H. was caused by or had a direct and substantial relationship to his ASD, it remained within the trial court's discretion whether to grant Suhay a deferred disposition. Considering the nature of Suhay's conduct and the severity of the charges against him, we cannot say that the circuit court would have abused its discretion in denying Suhay's request for a deferred disposition. *See Thomas v. Commonwealth*, 44 Va. App. 741, 753 ("Only when reasonable jurists could not differ can we say an abuse of discretion has occurred."), *adopted upon reh'g en banc*, 45 Va. App. 811 (2005).

[5] At Suhay's sentencing hearing, the Commonwealth's attorney informed the circuit court that, under Code § 19.2-303.6(A), the position of the Commonwealth's attorney and the views of the victim were to be considered in the court's exercise of its discretion, stating: "The Court may defer, the Court does not have to defer. We ask the Court to consider the position of the attorney for the Commonwealth and the views of the victim in this case."

Commonwealth's attorney and the views of the victim under Code § 19.2-303.6(A). Rather, the court's statement appears to serve the purpose of ensuring that all of the requirements of the statute were meticulously followed and its ruling was clear for the record.

Since the circuit court had found that Suhay's criminal conduct was not caused by, nor had a direct and substantial relationship to, his ASD, the court had to deny Suhay's request for a deferred disposition. Because the plain language of Code § 19.2-303.6 required the circuit court to deny Suhay's request, the position of the Commonwealth's attorney and the views of the victim were effectively rendered irrelevant at that point. However, the fact that the circuit court still considered the position of the Commonwealth's attorney and the views of the victim is, at worst, harmless error, since there is no indication in the record that doing so improperly influenced the court's factual findings under Code § 19.2-303.6(A). *See Graves v. Commonwealth*, 65 Va. App. 702, 712 (2016) ("This Court may uphold a decision on the ground that any error involved is harmless . . . if it can conclude, without usurping the [trial court's] fact-finding function, 'that the error did not influence the [court], or had but slight effect.'" (quoting *Clay v. Commonwealth*, 262 Va. 253, 260 (2001))).

## CONCLUSION

We hold that the circuit court did not err in finding that Suhay's electronic solicitation of a minor was not caused by, nor had a direct and substantial relationship to, his autism spectrum disorder. We further hold that even if the circuit court erroneously considered the position of the Commonwealth's attorney and the views of the victim, such error was harmless. Thus, the circuit court did not err in denying Suhay's request for a deferred disposition under Code § 19.2-303.6. Accordingly, we affirm the judgment of the circuit court.

*Affirmed*.