COURT OF APPEALS OF VIRGINIA


Present:   Judges Elder, Humphreys and Powell
Argued at Richmond, Virginia


FRED C. WILLIAMS, S/K/A
   FRED C. WILLIAMS, JR.
                                                              OPINION BY
v.        Record No. 2558-07-1                      JUDGE ROBERT J. HUMPHREYS
                                                              DECEMBER 16, 2008
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF PORTSMOUTH
Dean W. Sword, Jr., Judge

S. Jane Chittom, Appellate Defender, for appellant.

Gregory W. Franklin, Assistant Attorney General (Robert F.
McDonnell, Attorney General, on brief), for appellee.


Fred C. Williams ("Williams") appeals his conviction for grand larceny, in violation of

Code § 18.2-95, and conspiracy to commit grand larceny, in violation of Code § 18.2-23(B).

Williams argues that the trial court erred by refusing to suppress statements that he made to a

police officer because the warning given by the officer did not sufficiently advise him of his right

to an attorney.  Williams also argues that the trial court erred by holding that the evidence was

sufficient to prove that he conspired to commit larceny.  For the following reasons, we disagree.

I.  BACKGROUND

"On appeal, we review the evidence in the light most favorable to the Commonwealth,

the prevailing party below, giving it the benefit of all reasonable inferences."  Pierce v.

Commonwealth, 50 Va. App. 609, 612, 652 S.E.2d 785, 787 (2007).  So viewed, the evidence

established the following.

Late in the evening of January 9, 2007, Adrian Smith ("Smith") broke into two trailers on the property of Old Dominion Metals. From those trailers, Smith removed several Rubbermaid containers containing copper and brass, and placed the containers between the two trailers. The containers were too heavy for Smith to carry away by himself, so he called Williams and asked him to help him "pick some stuff up." When Williams arrived, Smith told Williams that he had removed several containers from the trailers and needed help carrying them away. Williams drove his truck to the trailers, where he and Smith loaded the containers into the truck's bed. Williams then drove the truck with the metal to Smith's house. Williams later admitted that he knew at the time that Smith did not have permission to take the containers.

Williams was subsequently arrested on an unrelated charge, and was being held at the Chesapeake City Jail, when Detective Mark Anthony ("Detective Anthony") of the Portsmouth Police Department went to speak with him. Prior to speaking with Williams about the stolen metal, Detective Anthony gave him the following warnings:

> You have the right to remain silent. Anything you say can and will be used against you in a court of law. You have the right to an attorney. If you cannot afford an attorney, the Court will consider appointing an attorney for you.

Detective Anthony then asked Williams if he understood his rights, and Williams responded "Yes." Williams went on to describe the facts set forth above.

Following his confession, the Commonwealth charged Williams with grand larceny, in violation of Code § 18.2-95 and conspiracy to commit grand larceny, in violation of Code § 18.2-23(B). Prior to trial, Williams moved to suppress his confession, arguing that he was not sufficiently apprised of his right to an attorney. Williams claimed that the officer's statement that the court would "consider" appointing an attorney did not satisfy the requirements enunciated in Miranda v. Arizona, 384 U.S. 436 (1996). The trial court denied Williams' motion.

At trial, the Commonwealth presented only one witness, Detective Anthony. Detective Anthony testified about what Williams had told him during the interview in the Chesapeake City Jail. Williams moved to strike the evidence, claiming that the Commonwealth failed to prove a conspiracy because Smith had already "completed" the larceny before Williams agreed to assist him. The trial court denied Williams' motion and ultimately convicted him of both charges.

## II. ANALYSIS

### A. The Miranda Warnings

Williams claims that Detective Anthony violated his Fifth Amendment rights by interrogating him without adequately warning him of his rights against self-incrimination. Williams argues that Detective Anthony's statement, "If you cannot afford an attorney, the Court will *consider* appointing an attorney for you," was not sufficient to inform him of his right to an attorney. Specifically, Williams claims that statement does not convey "the absolute right to have counsel appointed if one is indigent."

"On appeal from a trial court's denial of a motion to suppress, the burden is on the appellant to show that the denial of the motion constituted reversible error." Emerson v. Commonwealth, 43 Va. App. 263, 272, 597 S.E.2d 242, 247 (2004). "[W]e are bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them." McGee v. Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (*en banc*). However, "[w]e review *de novo* questions of law and the 'trial court's application of defined legal standards to the particular facts of a case.'" Emerson, 43 Va. App. at 272, 597 S.E.2d at 247 (quoting Watts v. Commonwealth, 38 Va. App. 206, 213, 562 S.E.2d 699, 703 (2002)).

In Miranda, the Supreme Court of the United States "established certain procedural safeguards that require police to advise criminal suspects of their rights under the Fifth and

Fourteenth Amendments before commencing custodial interrogation." Duckworth v. Eagan, 492

U.S. 195, 202 (1989).  Specifically, the Court required that a suspect be told that

> he has the right to remain silent, that anything he says can be used
> against him in a court of law, that he has the right to the presence
> of an attorney, and that *if he cannot afford an attorney one will be
> appointed for him prior to any questioning if he so desires*.

Miranda, 384 U.S. at 479 (emphasis added).  However, the Supreme Court has "never insisted

that Miranda warnings be given in the exact form described in that decision."  Duckworth, 492

U.S. at 202.  "In Miranda itself, the Court said that 'the warnings required and the waiver

necessary in accordance with our opinion today are, *in the absence of a fully effective equivalent*,

prerequisites to the admissibility of any statement made by a defendant.'"  Id. (quoting Miranda,

384 U.S. at 476) (emphasis in original).  Moreover, "'the rigidity of Miranda [does not] extend to

the precise formulation of the warnings given a criminal defendant,' and [] 'no talismanic

incantation [is] required to satisfy its strictures.'"  Id. at 202-03 (quoting California v. Prysock,

453 U.S. 355, 359 (1981) (*per curiam*)) (first and last alteration in original).

Thus, the mere fact that Detective Anthony did not use the exact language of Miranda

does not make the warning ineffective.  In order to determine whether Detective Anthony

adequately advised Williams of his rights, we must determine if Detective Anthony's statement

was a "fully effective equivalent" to the warnings articulated in Miranda.  384 U.S. at 476.

In Duckworth, the Supreme Court of the United States addressed a similar situation.  In

that case,

> The police told respondent that he had the right to remain silent,
> that anything he said could be used against him in court, that he
> had the right to speak to an attorney before and during questioning,
> that he had "this right to the advice and presence of a lawyer even
> if [he could] not afford to hire one," and that he had the "right to
> stop answering at any time until [he] talked to a lawyer."  As
> noted, the police also added that they could not provide respondent
> with a lawyer, but that one would be appointed "*if and when you
> go to court*."

- 4 -

<u>Duckworth</u>, 492 U.S. at 203 (citations omitted) (emphasis added).  The United States Court of

Appeals for the Seventh Circuit held that the

> "if and when you go to court" language suggested that "only those
> accused who can afford an attorney have the right to have one
> present before answering any questions," and "implie[d] that if the
> accused does not 'go to court,' i.e.[,] the government does not file
> charges, the accused is not entitled to [counsel] at all."

<u>Id.</u> (quoting <u>Eagan v. Duckworth</u>, 843 F.2d 1554, 1557 (7th Cir. 1988)) (alteration in original).

The Supreme Court held that the Seventh Circuit "misapprehended the effect of the inclusion of

'if and when you go to court' language."  <u>Id.</u>  The Court reasoned that the "if and when"

language simply "described the procedure for the appointment of counsel," explaining that,

"[u]nder Indiana law, counsel is appointed at the defendant's initial appearance in court."  <u>Id.</u> at

204 (citing Ind. Code § 35-33-7-6 (1988)).  The Court concluded that the warning given

"touched all of the bases required by <u>Miranda</u>," and, was therefore, sufficient to alert the

defendant to his Fifth Amendment rights.  <u>Id.</u> at 203.

Here, as in <u>Duckworth</u>, the officer added language to the <u>Miranda</u> warning that could be

interpreted as qualifying or limiting the suspect's Fifth Amendment rights.  However, as was the

case in <u>Duckworth</u>, Detective Anthony's warning did nothing more than "describe[] the

procedure for appointment of counsel."  <u>Id.</u> at 204.  In Virginia, the government does not provide

attorneys merely because someone claims to be unable to afford one.  Code § 19.2-159 provides:

> If the accused shall claim that he is indigent . . . the court shall
> determine from oral examination of the accused or other competent
> evidence whether or not the accused is indigent within the
> contemplation of law pursuant to the guidelines set forth in this
> section.

Thus, Detective Anthony's statement that "the court will consider appointing an attorney" was

technically accurate in reflecting the procedure set forth in Code § 19.2-159.  Had Williams

claimed to be unable to afford an attorney, he would have had to appear in court, where a judge

would have considered whether or not he was indigent according to law.  The warnings given by Detective Anthony did nothing more than convey this procedure to Williams.  The warnings alerted Williams to all of his substantive rights under the Fifth Amendment, without qualification.  Detective Anthony's statement "touched all the bases required by Miranda," Duckworth, 492 U.S. at 203, in that they fairly advised him of his right to remain silent and his right to consult with counsel, if he chose and were thus the "fully effective equivalent" of the warnings spelled out by the Supreme Court, Miranda, 384 U.S. at 476.  Therefore, the trial court did not err by refusing to suppress the statements made by Williams to Detective Anthony.[1]

### B.  Conspiracy to Commit Grand Larceny

Williams claims that the evidence was insufficient to convict him of conspiracy to commit larceny because Smith's actions prior to the agreement were already sufficient to convict

---

[1] The Supreme Court of Virginia has approved of a Miranda warning similar to the warning given in this case.  In Poyner v. Commonwealth, 229 Va. 401, 329 S.E.2d 815 (1985), the Supreme Court held that the following warning was sufficient:

> You have the right to remain silent.
>
> Anything you say can and will be used against you in a court of law.
>
> You have the right to have an attorney present before any questions.
>
> If you cannot afford an attorney, the Court is *empowered* to appoint one for you.

Poyner, 229 Va. at 404, 408, 329 S.E.2d at 820, 821 (emphasis added).  However, the issue in that case was not whether the warning was sufficient to inform the defendant of his right to counsel if he is indigent.  Rather, the Court only addressed whether the warning was "so vague as to beg the question as to *when* the Court would appoint Poyner a lawyer . . . ."  Id. at 408, 329 S.E.2d at 821 (emphasis added).  Although the Court's approval of the warning, "If you cannot afford an attorney, the Court is empowered to appoint one for you," is dicta, it does lend support to our approval of a warning that states, "If you cannot afford an attorney, the Court will consider appointing an attorney for you."

Smith of larceny. Thus, Williams reasons, there could have been no "preconcert" and, therefore, no conspiracy.

When considering a challenge that the evidence presented at trial is insufficient, we "presume the judgment of the trial court to be correct" and reverse only if the trial court's decision is "plainly wrong or without evidence to support it." Davis v. Commonwealth, 39 Va. App. 96, 99, 570 S.E.2d 875, 876-77 (2002). We do not "substitute our judgment for that of the trier of fact." Wactor v. Commonwealth, 38 Va. App. 375, 380, 564 S.E.2d 160, 162 (2002). "Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979).

Code § 18.2-23 makes it a felony to "conspire, confederate or combine with another or others . . . to commit larceny or counsel, assist, aid or abet another in the performance of a larceny, where the aggregate value of the goods or merchandise involved is more than $200." "Conspiracy is defined as 'an agreement between two or more persons by some concerted action to commit an offense.'" Feigley v. Commonwealth, 16 Va. App. 717, 722, 432 S.E.2d 520, 524 (1993) (quoting Wright v. Commonwealth, 224 Va. 502, 505, 297 S.E.2d 711, 713 (1982)). The crime is "complete when the parties agree to commit an offense." Gray v. Commonwealth, 260 Va. 675, 680, 537 S.E.2d 862, 865 (2000). "In order to establish the existence of a conspiracy, as opposed to mere aiding and abetting, the Commonwealth must prove 'the additional element of preconcert and connivance not necessarily inherent in the mere joint activity common to aiding and abetting.'" Zuniga v. Commonwealth, 7 Va. App. 523, 527, 375 S.E.2d 381, 384 (1988) (quoting United States v. Peterson, 524 F.2d 167, 174 (4th Cir. 1975)).

Williams does not dispute the fact that he agreed with Smith to steal the containers of metal from Old Dominion Metal. Rather, he seizes on the word "preconcert" from our

jurisprudence, and argues that there could have been no preconcert because Smith had already committed larceny before the two men entered into an agreement. Williams is correct in that Smith had already committed larceny prior to entering into the agreement. "Larceny is the taking and carrying away of the goods and chattels of another with intent to deprive the owner of the possession thereof permanently." Lund v. Commonwealth, 217 Va. 688, 691, 232 S.E.2d 745, 748 (1977). "'[A]ny carrying away movement, however slight, even though it takes but a moment, is sufficient'" to satisfy that element of the offense. Bryant v. Commonwealth, 248 Va. 179, 183, 445 S.E.2d 667, 670 (1994) (quoting 3 C. Torcia, Wharton's Criminal Law § 378 (14th ed. 1980)). Thus, it is true that by taking the containers and carrying them out of the trailers, Smith committed larceny.

Williams is incorrect, however, in concluding that Smith's prior larceny precluded him from conspiring to continue committing that same larceny. Larceny is a continuing offense. Commonwealth v. Cousins, 29 Va. (2 Leigh) 708 (1830).

> "[W]here property has been feloniously taken, every act of removal or change of possession by the thief constitute[s] a new taking and asportation; and, as the right of possession, as well as the right of property, continues in the owner, every such act is a new violation of the owner's right of property and possession."

Dunlavey v. Commonwealth, 184 Va. 521, 527, 35 S.E.2d 763, 766 (1945) (quoting Strouther v. Commonwealth, 92 Va. 789, 791, 22 S.E. 852, 791 (1895)). Thus, when Smith and Williams agreed to steal the metal, Smith was still committing larceny. Every new act of removal by Smith was a new taking and asportation of the containers. Williams agreed with Smith to steal metal from Old Dominion Metal. Because the crime was ongoing when Williams agreed to "conspire, confederate or combine" with Smith in completing its execution, we find no error in the trial court's refusal to strike the evidence of conspiracy.

- 8 -

## III. CONCLUSION

For the reasons stated above, we hold that Detective Anthony sufficiently apprised Williams of his <u>Miranda</u> rights and that the evidence was sufficient to prove that Williams conspired with Smith to commit grand larceny. We therefore affirm the decision of the trial court.

<u>Affirmed.</u>