COURT OF APPEALS OF VIRGINIA

Present: Judges Petty, Alston and Russell
Argued at Richmond, Virginia

UNPUBLISHED

WAYNE SCOTT CAHOON

v.      Record No. 0781-15-2

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
JUDGE WESLEY G. RUSSELL, JR.
MARCH 29, 2016

FROM THE CIRCUIT COURT OF SPOTSYLVANIA COUNTY
Joseph J. Ellis, Judge

Jenna C. Nacht, Assistant Public Defender, for appellant.

John W. Blanton, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.

Wayne Scott Cahoon, appellant, was convicted in a bench trial of possessing a Schedule I or

II controlled substance with the intent to distribute in violation of Code § 18.2-248, and conspiring

to distribute a Schedule I or II controlled substance in violation of Code §§ 18.2-248 and 18.2-256.

On appeal, appellant challenges the sufficiency of the evidence for each conviction. Finding that

the evidence was sufficient to allow a reasonable factfinder to conclude beyond a reasonable doubt

that appellant committed both offenses, we affirm the convictions.

BACKGROUND

"Under well-settled principles of appellate review, we consider the evidence presented at

trial in the light most favorable to the Commonwealth, the prevailing party below." Smallwood

v. Commonwealth, 278 Va. 625, 629, 688 S.E.2d 154, 156 (2009) (quoting Bolden v.

Commonwealth, 275 Va. 144, 148, 654 S.E.2d 584, 586 (2008)). This principle requires us to

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

"discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." Parks v. Commonwealth, 221 Va. 492, 498, 270 S.E.2d 755, 759 (1980) (emphasis and internal quotation marks omitted).

So viewed, the evidence established that, on November 23, 2013, Spotsylvania County Sheriff's Deputy Mark Friedman observed a driver and passenger in a vehicle that was familiar to Deputy Friedman. He followed the vehicle after concluding that neither individual inside the vehicle was its owner, a local resident. Additionally, Deputy Friedman found it unusual that *both* the driver and the passenger continually were looking at him using the car's side and rearview mirrors. He followed the vehicle southbound on Route 1 until the vehicle entered the turn lane to access the ramp for Interstate 95 South. Deputy Friedman did not follow the vehicle onto the interstate. He passed it as he continued southbound on Route 1.

Still suspicious of what he had observed, Deputy Friedman stayed in the general vicinity of where he first observed the vehicle to see if it returned. In short order, the vehicle returned to the area and Deputy Friedman resumed following it. He followed the vehicle into a gas station parking lot. After appellant parked the vehicle and both occupants had exited, Deputy Friedman approached them, identified himself, and asked if he could speak with them.

Appellant, a Spotsylvania resident, was the driver of the vehicle and his brother, Roy, had been in the passenger seat. Upon request, appellant provided Deputy Friedman with a Virginia identification card and Friedman was able to determine that appellant was not licensed to drive in Virginia. Roy, a Massachusetts resident, provided an identification card issued by Massachusetts and had no driver's license.

Both appellant and Roy consented to the deputy's search of both their persons and the car. Deputy Friedman recovered from appellant's wallet a folded sheet of paper upon which was written:

"60 oxy 80s street value 4800.00" and "180 oxy 30$ street value 5400." His search of Roy revealed a prescription pill bottle, in Roy's name, containing Oxycodone. From inside the vehicle, Deputy Friedman recovered, among other things, a bottle of morphine pills prescribed in appellant's name, a notebook entitled "Roy's doc book and dates," and multiple prescriptions in Roy's name that all had been written that day by a doctor whose office is in Arlington.

Deputy Friedman placed both appellant and Roy under arrest and read them their rights pursuant to Miranda. Deputy Friedman noted that Roy's Oxycodone prescription had been filled approximately two hours earlier in Fairfax and that fifty pills were missing. When questioned about the missing pills, Roy responded that he had consumed them. The prescription for morphine in appellant's name had been filled on November 19, 2013, mere days prior to the encounter. Of the pills prescribed, fifty pills were missing from that container. Appellant initially stated that the missing pills were in a pocket of a jacket at his home, but changed his story and ultimately stated that he had consumed all of the missing morphine.[1]

Deputy Friedman testified that neither appellant nor Roy appeared to be under the influence of any drugs during this encounter. Both individuals denied selling any drugs, and Deputy Friedman did not find amounts of money that one might associate with illicit drug sales.

At trial, the court accepted Detective Ray Haney as an expert regarding the illegal prescription drug market in Spotsylvania County. Detective Haney reviewed the piece of paper taken from appellant's wallet and opined that "60" would refer to the quantity of pills and "80" to the milligrams contained in each pill. According to Detective Haney, the note indicated that selling sixty of those pills would yield $4,800 on the street. Likewise, selling 180 of the thirty milligram pills would yield $5,400. He explained that this is consistent with the street value of Oxycodone in Spotsylvania, which is approximately $1 per milligram. He also testified that the

_____

[1] Dosage instructions on the bottle stated, "Take 1 tablet by mouth 2 times a day."

sheet of paper, combined with notes in the notebook Deputy Friedman had found and the number of pills missing from both prescription bottles, indicated to him that the notebook was used to keep track of drug sales.

Detective Haney, who had been called to the scene of the arrest, testified that he did not observe appellant or Roy acting as if either had recently consumed significant doses of the medications in question. He stated that, based on the dates of the prescriptions, the number of pills missing from each bottle, and the note found in appellant's wallet, it was his opinion that the evidence was inconsistent with personal use of the medications in question.

The trial court found appellant guilty of possession with intent to distribute a controlled substance and conspiracy to distribute a controlled substance.

This appeal followed.

## ANALYSIS

### Possession of a Controlled Substance with the Intent to Distribute

Appellant acknowledges that he possessed the morphine, which is a Schedule II controlled substance. He argues that the evidence was insufficient to allow the factfinder to conclude that he possessed the drug with the intent to distribute. We disagree.

"Intent is a state of mind that may be proved by an accused's acts or by his statements and that may be shown by circumstantial evidence." Wilson v. Commonwealth, 249 Va. 95, 101, 452 S.E.2d 669, 673-74 (1995) (quoting Wright v. Commonwealth, 245 Va. 177, 193, 427 S.E.2d 379, 390 (1993)). "Circumstantial evidence, if sufficiently convincing, is as competent and entitled to the same weight as direct testimony." McCain v. Commonwealth, 261 Va. 483, 493, 545 S.E.2d 541, 547 (2001).

This Court and the Supreme Court of Virginia have recognized several factors that are probative circumstantial evidence of intent to distribute a controlled substance. Williams v.

Commonwealth, 52 Va. App. 194, 202, 662 S.E.2d 627, 631 (2008). Expert testimony, usually that of a police officer familiar with the local market in the controlled substance, is routinely offered to prove whether the drugs seized are more consistent with personal use or likely intended for distribution. Askew v. Commonwealth, 40 Va. App. 104, 109-10, 578 S.E.2d 58, 61 (2003).

"The quantum of evidence necessary to prove an intent to distribute depends on the facts and circumstances of each case." Id. at 110, 578 S.E.2d at 61. Moreover, even where no single piece of evidence sufficiently supports a finding on its own, "the 'combined force of many concurrent and related circumstances, each insufficient in itself, may lead a reasonable mind irresistibly to a conclusion.'" Derr v. Commonwealth, 242 Va. 413, 425, 410 S.E.2d 662, 669 (1991) (quoting Stamper v. Commonwealth, 220 Va. 260, 273, 257 S.E.2d 808, 818 (1979)). Ultimately, it is for the factfinder "to decide whether the defendant acted with criminal intent in the commission of the crimes." Griggs v. Commonwealth, 220 Va. 46, 51, 255 S.E.2d 475, 478 (1979).

Here, based on the expert testimony and circumstantial evidence presented at trial, the trier of fact reasonably could conclude that appellant possessed the morphine with the intent to distribute it. Appellant had a prescription for morphine that was missing fifty pills in just a period of days. The expert testimony established that such a consumption pattern was inconsistent with personal use, and the evidence established that neither occupant of the vehicle appeared to be under the influence of any substance, including the medications at issue. In addition to drawing the conclusion that appellant had not consumed the pills, the factfinder was entitled to conclude that appellant neither had abandoned nor misplaced the morphine. See Ward v. Commonwealth, 47 Va. App. 733, 753 n.4, 627 S.E.2d 520, 530 n.4 (2006) ("Our cases recognize that drugs are a commodity of significant value, unlikely to be abandoned or carelessly left in an area."), aff'd on other grounds, 273 Va. 211, 639 S.E.2d 269 (2007).

Finally, appellant's inconsistent stories provided the factfinder with additional evidence of his guilt. His two versions of what had happened to the missing morphine—that the pills were in the pocket of a jacket versus that he had consumed them all—are in direct conflict; thus, at a minimum, appellant told at least one lie regarding the disposition of the pills. Given all of the evidence, the factfinder reasonably could conclude that both statements were false. "A defendant's false statements are probative to show he is trying to conceal his guilt, and thus [are] evidence of his guilt." Rollston v. Commonwealth, 11 Va. App. 535, 548, 399 S.E.2d 823, 831 (1991) (citations omitted). The trial court was entitled to take this into account when considering whether appellant possessed the morphine with the intent to distribute it.

Coupled with the existence of the note in appellant's wallet that can be interpreted only as indicating familiarity with the illegal prescription drug trade,[2] a rational factfinder easily could conclude from the evidence in this case that appellant possessed the morphine with the intent to distribute it.[3]

Conspiracy to Distribute a Controlled Substance

Appellant contends the evidence was insufficient to sustain his conviction for conspiracy to distribute a controlled substance. We disagree.

A conspiracy is "an agreement between two or more persons by some concerted action to commit an offense." Wright v. Commonwealth, 224 Va. 502, 505, 297 S.E.2d 711, 713 (1982)

---

[2] Nothing in the record reveals an "innocent" explanation for the note, and we cannot divine one. Appellant only argues that the note cannot support a conclusion that he intended to distribute morphine because the note only referred to the "street value" of Oxycodone. Although his recitation of the contents of the note is correct, it ignores that the note establishes at least some involvement of appellant in the illegal trafficking of prescription drugs, and therefore, makes his distribution of prescription drugs, including morphine, more likely.

[3] Because we determine that appellant possessed the morphine with the intent to distribute, we need not decide whether appellant possessed the Oxycodone with the intent to distribute.

(quoting Falden v. Commonwealth, 167 Va. 542, 544, 189 S.E. 326, 327 (1937)).  The crime is "complete when the parties agree to commit an offense," and "[n]o overt act in furtherance of the underlying crime is necessary."  Gray v. Commonwealth, 260 Va. 675, 680, 537 S.E.2d 862, 865 (2000).

The Commonwealth may, and frequently must, rely on circumstantial evidence to establish the existence of a conspiracy.  Stevens v. Commonwealth, 14 Va. App. 238, 241, 415 S.E.2d 881, 883 (1992).  Although no overt act is necessary to establish a conspiracy, such an act may support a finding of the existence of a conspiracy, Poole v. Commonwealth, 7 Va. App. 510, 513, 375 S.E.2d 371, 372 (1988) (quoting United States v. Harris, 433 F.2d 333, 335 (4th Cir. 1970)), and "a common purpose and plan may be inferred from a 'development and collocation of circumstances,'" Floyd v. Commonwealth, 219 Va. 575, 581, 249 S.E.2d 171, 175 (1978) (quoting United States v. Godel, 361 F.2d 21, 23 (4th Cir. 1966)).

> [W]hen "it has been shown that the defendants 'by their acts pursued the same object, one performing one part and the others performing another part so as to complete it or with a view to its attainment, the jury will be justified in concluding that they were engaged in a conspiracy to effect that object.'"

Charity v. Commonwealth, 49 Va. App. 581, 586, 643 S.E.2d 503, 505 (2007) (quoting Brown v. Commonwealth, 10 Va. App. 73, 78, 390 S.E.2d 386, 388 (1990)).

It is true that the Commonwealth presented no witness who observed or heard the brothers expressly agree to traffic in prescription drugs.  However, "[t]here is no distinction in the law between the weight or value to be given to either direct or circumstantial evidence."  Muhammad v. Commonwealth, 269 Va. 451, 479, 619 S.E.2d 16, 31-32 (2005), cert. denied, 547 U.S. 1136 (2006).  "While no single piece of evidence may be sufficient, the combined force of many concurrent and related circumstances, each insufficient in itself, may lead a reasonable mind irresistibly to a conclusion."  Id. (citation omitted).  Here, all of the attendant

- 7 -

circumstances, taken together, were sufficient to allow a factfinder reasonably to conclude that appellant and his brother had an agreement to traffic in prescription drugs.

Roy, with appellant as his only observed source of transportation, had obtained a prescription for Oxycodone in Arlington, filled it in Fairfax, and had distributed over fifty pills in just two hours. Part of this limited time period was spent being followed by Deputy Friedman in Spotsylvania, avoiding the deputy by going on the interstate, and then returning to the area they had just left, which allowed the deputy to resume his surveillance. Throughout the period of surveillance by the deputy, *both* brothers repeatedly made furtive glances into the vehicle's mirrors, suggesting that both knew that they had reason to fear being stopped by the deputy.

 The evidence supports a conclusion that neither brother had consumed the pills during the time since the prescription had been filled. The evidence was sufficient to allow the factfinder to conclude that both brothers lied to the police about their activities, giving rise to an inference supporting a finding of guilt. Appellant, despite possessing no prescription in his name for Oxycodone, possessed a note describing the street value of the drug in Spotsylvania.[4] As noted above, appellant offers no innocent explanation for the note, and we cannot think of one.

Furthermore, appellant's "price list" note and Roy's notebook that was seized link the brothers to the illegal prescription medication trade. Viewed in its totality, the evidence was sufficient to allow the factfinder to conclude that the brothers had agreed to engage in the illegal sale of prescription medications and, in fact, had done so on November 23, 2013.

Regarding both convictions, appellant argues that we must reverse his convictions because he offered the trial court reasonable hypotheses of innocence—that the brothers had

---

[4] That the references on appellant's note were for pills of a different concentration than the pills prescribed to Roy is of little significance. The note links appellant to the illegal sale of Oxycodone, and a simple mathematical conversion would allow one to determine the street value of Roy's pills from the information possessed by appellant.

consumed the pills or that, even if they had sold the missing pills, the remainder could have been possessed for the purposes of personal consumption—and the evidence did not completely eliminate these possibilities. This misunderstands both the reasonable-hypothesis principle and the importance of the factfinder.

> Properly understood, the reasonable-hypothesis principle is not a discrete rule unto itself. The statement that circumstantial evidence must exclude every reasonable theory of innocence is simply another way of stating that the Commonwealth has the burden of proof beyond a reasonable doubt. Thus, the principle does not add to the burden of proof placed upon the Commonwealth in a criminal case. It merely echoes the standard applicable to every criminal case.

> It is true that a factfinder cannot "arbitrarily" choose, as between two equally plausible interpretations of a fact, one that incriminates the defendant. *The choice becomes arbitrary, however, only when no rational factfinder could believe the incriminating interpretation of the evidence and disbelieve the exculpatory one. When examining an alternate hypothesis of innocence, the question is not whether "some evidence" supports the hypothesis, but whether a rational factfinder could have found that the incriminating evidence renders the hypothesis of innocence unreasonable.*

Vasquez v. Commonwealth, ___ Va. ___, ___, 781 S.E.2d 920, ___ (2016) (emphasis added) (internal quotation marks, citations and footnote omitted). Considering all of the evidence, we cannot say that the factfinder's rejection of appellant's story that the brothers had consumed the missing pills or may not have intended to sell the remainder was arbitrary.

In concluding that the evidence was sufficient to support the convictions, we note that we examine a factfinder's conclusions "with the highest degree of appellate deference." Thomas v. Commonwealth, 48 Va. App. 605, 608, 633 S.E.2d 229, 231 (2006). "An appellate court does not 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" Williams v. Commonwealth, 278 Va. 190, 193, 677 S.E.2d 280, 282 (2009) (quoting Jackson v. Virginia, 443 U.S. 307, 318-19 (1979)). Instead, the only "relevant question

- 9 -

is, after reviewing the evidence in the light most favorable to the prosecution, whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Sullivan v. Commonwealth, 280 Va. 672, 676, 701 S.E.2d 61, 63 (2010) (emphasis added).

This deferential appellate standard "applies not only to the historical facts themselves, but the inferences from those facts as well." Clanton v. Commonwealth, 53 Va. App. 561, 566, 673 S.E.2d 904, 907 (2009) (*en banc*) (internal quotation marks omitted). "Thus, a factfinder may 'draw reasonable inferences from basic facts to ultimate facts,'" Tizon v. Commonwealth, 60 Va. App. 1, 10, 723 S.E.2d 260, 264 (2012) (quoting Haskins v. Commonwealth, 44 Va. App. 1, 10, 602 S.E.2d 402, 406 (2004)), "unless doing so would push 'into the realm of *non sequitur*,'" id. (quoting Thomas, 48 Va. App. at 608, 633 S.E.2d at 231). As noted above, the evidence was sufficient to allow the factfinder to conclude beyond a reasonable doubt that appellant was guilty of the crimes charged.

CONCLUSION

Based on the evidence presented, a factfinder reasonably could conclude beyond a reasonable doubt that appellant possessed morphine with the intent to distribute and conspired with his brother to distribute controlled substances. Accordingly, we affirm his convictions.

Affirmed.

Alston, J., dissenting, in part.

I join the majority opinion finding the evidence more than sufficient to convict appellant of possession with the intent to distribute a controlled substance in violation of Code §§ 18.2-248; 54.1-3446 through 54.1-3452.

I respectfully dissent from the majority decision finding that appellant conspired to distribute a controlled substance.

"Conspiracy is defined as an agreement between two or more persons by some concerted action to commit an offense." Williams v. Commonwealth, 53 Va. App. 50, 59, 669 S.E.2d 354, 358 (2008) (quoting Feigley v. Commonwealth, 16 Va. App. 717, 722, 432 S.E.2d 520, 524 (1993)). "The crime is 'complete when the parties agree to commit an offense.'" Id. (quoting Gray v. Commonwealth, 260 Va. 675, 680, 537 S.E.2d 862, 865 (2000)). "In order to establish the existence of a conspiracy, as opposed to mere aiding and abetting, the Commonwealth must prove the additional element of preconcert and connivance not necessarily inherent in the mere joint activity common to aiding and abetting." Id. at 59-60, 669 S.E.2d at 358 (quoting Zuniga v. Commonwealth, 7 Va. App. 523, 527, 375 S.E.2d 381, 384 (1988)). The Commonwealth "must prove beyond a reasonable doubt that an agreement existed." Floyd v. Commonwealth, 219 Va. 575, 580, 249 S.E.2d 171, 174 (1978) (citing Reed v. Commonwealth, 213 Va. 593, 194 S.E.2d 746 (1973)).

Evaluating the evidence in an effort to find a necessary agreement between appellant and Roy, even in the light most favorable to the Commonwealth, Detective Haney could not testify with any particularity as to what the notations in Roy's notebook meant. There certainly was no testimony that these notations were owe sheets or that they referenced appellant or any stake he may have in the sale of Oxycodone. Moreover, the paper found in appellant's pocket did not reference any agreement or plan to sell Oxycodone on the day of the arrest or in the future; it

merely noted quantities, dosages, and street values of pills not in appellant's or Roy's possession. A reasonable fact-finder might have concluded that the note may prove the crime of aiding and abetting; however it does not prove or lead to a reasonable inference that Roy and appellant made an agreement to sell Oxycodone and then acted in concert on that agreement. My reading of the law of the Commonwealth would suggest that there is a subtle yet significant difference between the crime of conspiracy and the crime of aiding and abetting. And respectfully, in my view, the Commonwealth's evidence is lacking to prove the crime of conspiracy.

For these reasons, I respectfully dissent from the majority opinion affirming appellant's conspiracy conviction.