COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Decker, Judge Alston and Senior Judge Frank
Argued at Norfolk, Virginia

UNPUBLISHED

DOMENICO O. GREENE, JR.

                                                 MEMORANDUM OPINION[*] BY

v.      Record No. 0641-18-1        CHIEF JUDGE MARLA GRAFF DECKER
                                                APRIL 23, 2019

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF HAMPTON
Christopher W. Hutton, Judge

Stephen K. Smith for appellant.

John I. Jones, IV, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.


Domenico O. Greene, Jr., appeals his convictions for grand larceny, statutory burglary, and

conspiracy to commit statutory burglary, in violation of Code §§ 18.2-22, -91, and -95.[1] On appeal,

he argues that the evidence was insufficient to support his convictions because it failed to prove that

he was one of the criminal agents or had any knowledge of the larceny and burglary. He also

contends that the evidence was insufficient to prove that he conspired with others to commit the

offenses. We hold that the direct and circumstantial evidence, viewed under the proper standard,

establishes that he committed the crimes. Accordingly, we affirm the convictions.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] The appellant was also convicted of the felony offense of eluding a police officer in
violation of Code § 46.2-817(B). This conviction is not before the Court.

## I. BACKGROUND[2]

The appellant was indicted in pertinent part for "break[ing] and enter[ing] in the daytime . . . the dwelling of Donna Ayotte and Steven Ayotte[] with the intent to commit larceny." He was also indicted for conspiracy to commit that offense and for grand larceny. The appellant was tried jointly for these offenses with Ryan Taybron.[3]

At trial, the evidence established that Ms. Ayotte left her home at about 11:00 a.m. on February 25, 2016. Mr. Ayotte was at work at that time. Around 12:15 p.m., Ms. Ayotte received a call from the police on her cell phone reporting that her home had been burglarized.

Additional evidence reflected that Officer Mark Ramirez of the Hampton Police Division "was dispatched to a burglary in progress" at the Ayotte address. Dispatch reported that four males of a specified race were breaking into the residence and provided a description of their vehicle "as a black Honda Civic displaying temporary tags."[4]

When Officer Ramirez arrived in the area, he saw a vehicle that matched the description he had received. He also noted that four men of the same race as the reported burglars were inside the car. Believing that the car and its occupants had been involved in the burglary, Ramirez activated his emergency equipment, and the car stopped in the middle of the road. As Ramirez approached on foot, the passenger door behind the driver opened, and the officer

---

[2] On appeal of the sufficiency of the evidence, the appellate court "view[s] the evidence and all reasonable inferences in the light most favorable to the Commonwealth, the prevailing party in the trial court." Rowland v. Commonwealth, 281 Va. 396, 399 (2011).

[3] Taybron also challenges his convictions on appeal. We resolve that appeal by separate opinion issued this same day. See Taybron v. Commonwealth, No. 0623-18-1 (Va. Ct. App. Apr. 23, 2019).

[4] The Commonwealth did not offer any evidence regarding the source of the burglary report, but the description of the burglars and their vehicle was admitted into evidence without objection.

commanded the person to stay in the vehicle and close the door. The passenger did as he was told, and at that point, the vehicle sped away.

The officer immediately got back into his police car and pursued the Honda. He saw the driver commit several traffic offenses, including traveling intermittently in the lane for oncoming traffic, nearly striking another car, and driving at speeds of 50 miles per hour in a zone of 25 to 30 miles per hour. At the end of a street with no outlet, the Honda struck a pole and came to a stop. The appellant got out of the driver's seat and attempted to flee, but Officer Ramirez restrained him beside the car and then placed him in the custody of another officer. A second man, the appellant's co-defendant Taybron, jumped out of the front passenger's seat and ran away but was apprehended nearby. The other two occupants, who were in the back seat, also fled.

Police recovered a variety of electronics from the Honda, which Mr. Ayotte identified as items stolen from his home. Ayotte identified photos of a tablet computer in a black-and-yellow case, three televisions, a laptop computer, two video game consoles, a video game controller, various video games, and a backpack as items taken from his home that day. The tablet computer was found on the front passenger floorboard of the Honda. Some of the gaming items were found in the pockets behind the front seats. The other items were found in the trunk. Ayotte testified that the insurance company valued the stolen items at $3,300. He further testified that he did not recognize the appellant or Taybron and did not give them permission to enter his home or take the property at issue.

Several hours after the men were apprehended, Officer William Darden interviewed the appellant about his involvement in the crimes.[5] The appellant admitted that he was driving the

---

[5] Officer Darden also interviewed Taybron. The trial court ruled that Taybron's statements to Darden were not admissible against the appellant. That ruling is not at issue in this appeal.

Honda at the time of the stop but claimed that he fled because he was driving without a license.[6] He also said that he had been driving the car for thirty minutes to an hour before the stop. When Darden asked if the appellant stopped anywhere while driving, he "responded with no." Additionally, the appellant said that he did not see anyone commit any crimes. He never admitted any "knowledge" of the burglary or the stolen items in the car.

The appellant opted not to present any evidence and twice moved to strike the Commonwealth's evidence. After hearing argument, the trial court denied the motions to strike and found the appellant guilty of the charged offenses. In doing so, the judge made numerous relevant factual findings. He noted that the evidence was "very clear" that a break-in and theft had occurred. He pointed out the report of a "burglary in progress" with a description of a car and the "very quick sighting of this car" by a police officer, who stopped it. The judge opined that it was "clear" that the appellant was the driver and that he fled twice, once by car and a second time on foot. The judge also emphasized that "the variety of items" taken from the home were found not only in the vehicle's trunk but also on the "passenger floorboard" and that "the possession of these items was immediately after this report[ed break-in], not hours or days" later. The court expressly found that the appellant's "action . . . as the driver" and "the speed with which [he] left" the scene of the stop contributed to a finding that the appellant was guilty beyond a reasonable doubt. Finally, the judge concluded that the circumstances established that the breaking and entering and grand larceny were "not . . . completely spontaneous" and that the men had "a sufficient prior agreement" to commit the offenses.

---

[6] Officer Darden testified, "I'm not exactly sure what the status of [the appellant's license] was at the time." He also said that he did not know whether the Honda was registered to the appellant.

The appellant was sentenced to five years of incarceration for each of the three offenses, but the court suspended part of each sentence, leaving him with two years nine months to serve concurrently on each one.

## II. ANALYSIS

The appellant acknowledges that the grand larceny and burglary of the victims' home occurred. Nevertheless, he argues that the evidence is insufficient to prove that he was one of the criminal agents or had any knowledge of the larceny and burglary. He also contends that the evidence was insufficient to establish that he conspired with the other occupants of the car to commit the crimes.

On appeal, we view the evidence "in the light most favorable to the Commonwealth, the prevailing party below." Smallwood v. Commonwealth, 278 Va. 625, 629 (2009) (quoting Bolden v. Commonwealth, 275 Va. 144, 148 (2008)). This deferential standard "requires us to 'discard the evidence of the accused in conflict with that of the Commonwealth[] and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn'" from that evidence. Vasquez v. Commonwealth, 291 Va. 232, 236 (2016) (quoting Bowman v. Commonwealth, 290 Va. 492, 494 (2015)). Additionally, the standard "applies not only to the historical facts themselves, but [also to] the inferences from those facts." Clanton v. Commonwealth, 53 Va. App. 561, 566 (2009) (*en banc*) (quoting Crowder v. Commonwealth, 41 Va. App. 658, 663 n.2 (2003)). In drawing inferences from the evidence, the fact finder may conclude regarding even a non-testifying defendant that his false statements establish that he lied to conceal his guilt. See Shackleford v. Commonwealth, 262 Va. 196, 209-10 (2001); Rollston v. Commonwealth, 11 Va. App. 535, 547-48 (1991).

Additionally, circumstantial evidence "is as competent and is entitled to as much weight as direct evidence, provided it is sufficiently convincing to exclude every reasonable hypothesis

except that of guilt." Breeden v. Commonwealth, 43 Va. App. 169, 177 (2004) (quoting Coleman v. Commonwealth, 226 Va. 31, 53 (1983)). "The reasonable-hypothesis principle 'merely echoes "the standard applicable to every criminal case."'" Commonwealth v. Moseley, 293 Va. 455, 464 (2017) (quoting Vasquez, 291 Va. at 250). It is "simply another way of stating that the Commonwealth has the burden of proof beyond a reasonable doubt." Commonwealth v. Hudson, 265 Va. 505, 513 (2003). Further, "[t]he Commonwealth need only exclude reasonable hypotheses of innocence that flow from the evidence, not those that spring from the imagination of the defendant." Archer v. Commonwealth, 26 Va. App. 1, 12 (1997) (alteration in original) (quoting Hamilton v. Commonwealth, 16 Va. App. 751, 755 (1993)). "Whether an alternative hypothesis of innocence is reasonable is a question of fact" that will be reversed on appeal only if plainly wrong. Id. at 12-13.

We consider the appellant's arguments in the context of these guiding legal principles.

## A. Grand Larceny and Burglary

The appellant does not contest that grand larceny of the victims' personal property and a burglary of their home occurred. Rather, he argues that the evidence was not sufficient to prove that he participated in the crimes.

Larceny is the taking and carrying away of the property of another with intent to permanently deprive the owner of the possession of that property. Williams v. Commonwealth, 53 Va. App. 50, 60 (2008) (quoting Lund v. Commonwealth, 217 Va. 688, 691 (1977)). A theft is classified as either grand larceny or petit larceny depending on the value of the goods taken. Compare Code § 18.2-95, with Code § 18.2-96.[7] Under settled principles, once a larceny has

---

[7] When the offenses at issue occurred in 2016, Code § 18.2-95 required proof of the theft of $200 or more to constitute grand larceny. Compare 1998 Va. Acts ch. 821 (reflecting the $200 requirement), with 2018 Va. Acts chs. 764-65 (amending the statute to require proof of the theft of property valued at $500 or more).

been established, the larceny inference applies to permit the fact finder to infer from the "unexplained possession of recently stolen goods . . . that the possessor is the thief." Archer, 26 Va. App. at 13; see Dobson v. Commonwealth, 260 Va. 71, 74-76 (2000) (recognizing the constitutionality of this principle when treated as a permissive inference).

Statutory burglary, in pertinent part, requires proof of a breaking and entering in the daytime with the intent to commit larceny. See Code §§ 18.2-90, -91; Grimes v. Commonwealth, 288 Va. 314, 317 (2014). As with larceny, an inference may apply to prove a charge of burglary. Cannady v. Commonwealth, 210 Va. 533, 535 (1970). "[U]pon proof of a breaking and entering" coupled with a simultaneous theft, "possession of the stolen goods shortly thereafter . . . has the same efficiency to give rise to an inference that the possessor is guilty of the breaking and entering." Id. (quoting Sullivan v. Commonwealth, 210 Va. 201, 203 (1969)).

For both larceny and statutory burglary, possession must be "exclusive" in order for the inference to arise, but "[o]ne can be in exclusive possession of an item when he jointly possesses it with another." Archer, 26 Va. App. at 13 (alteration in original) (quoting Best v. Commonwealth, 222 Va. 387, 389 (1981)). Proof of exclusive possession of recently stolen goods "throws upon the accused the burden of accounting for that possession." Hope v. Commonwealth, 10 Va. App. 381, 385 (1990) (*en banc*) (quoting Fout v. Commonwealth, 199 Va. 184, 190 (1957)). Where the possession is "unexplained or falsely denied," the inferences apply. See Lunsford v. Commonwealth, 55 Va. App. 59, 63 (2009) (quoting Cannady, 210 Va. at 535). "Whether the recent possession was sufficient to find a defendant guilty of the . . . offense[s] is within the province of the fact finder." Montague v. Commonwealth, 40 Va. App. 430, 438 (2003).

In this case, the location of the significant number of stolen goods throughout the vehicle driven by the appellant, coupled with his behavior during the encounter with police, supported

the conclusion that the appellant possessed the stolen goods. "Establishing constructive possession requires proof 'that the defendant was aware of both the presence and character of the [item] and that it was subject to his dominion and control.'" Watts v. Commonwealth, 57 Va. App. 217, 232-33 (2010) (alteration in original) (quoting Powers v. Commonwealth, 227 Va. 474, 476 (1984)). The evidence, including the appellant's flight, supports a finding that he had knowledge of the very recently stolen goods in the passenger compartment and the trunk. See Clagett v. Commonwealth, 252 Va. 79, 93 (1996) (observing that "[f]light following the commission of a crime is evidence of guilt"). Further, as the driver of the vehicle, the appellant also had access to both areas. See Castle v. Commonwealth, 196 Va. 222, 227 (1954) (noting that a defendant may be convicted of "knowingly possess[ing]" items "found . . . in a place [to] which he kept the key" (quoting Tyler v. Commonwealth, 120 Va. 868, 871 (1917))). Consequently, he had dominion and control over the items. See Hunter v. Commonwealth, 56 Va. App. 50, 59-60 & n.4 (2010). This proof of knowledge as well as dominion and control supports the finding that the appellant possessed the stolen goods, which in turn supports application of the two inferences. See Carter v. Commonwealth, 209 Va. 317, 318-19, 323-24 (1968) (upholding application of the larceny inference where the defendant had joint exclusive possession of stolen radios in the back floorboard of his car, which he had been driving in the presence of a passenger); Hope, 10 Va. App. at 383-85 (upholding application of the larceny inference where two people jointly possessed the stolen items in a bag inside a vehicle in which they were traveling). Based upon the proof of the appellant's joint possession of the stolen items, the trial court, as the fact finder, was entitled to infer that the appellant was guilty of both the grand larceny and the statutory burglary.

In addition to the effect of the inferences, the record contains ample other evidence supporting the trial court's findings that the appellant participated in the theft and entered the

victims' home with the necessary intent. The evidence established that Ms. Ayotte left her residence and its contents intact on the day in question. Seventy-five minutes later, she received a phone call from the police informing her that her residence had been burglarized. The evidence demonstrates that the police received the report of a burglary in progress at the Ayotte residence within an hour and fifteen minutes of when Ms. Ayotte left the home. The report included evidence that both the breaking and entering and larceny were committed at the same time, by the same people, as part of the same criminal enterprise. Further, the police officer responding to the residence to investigate the burglary "in progress" quickly spotted a vehicle matching the reported description of the burglars' car—a black Honda Civic with temporary license plates—driving away from the area of the Ayotte residence. See Cooper v. Commonwealth, 54 Va. App. 558, 574 n.6 (2009) (explaining that hearsay evidence "'admitted without objection' . . . may 'properly be considered' and 'given its natural probative effect'" (quoting Baughan v. Commonwealth, 206 Va. 28, 31 (1965))). Inside the described vehicle, the officer saw four men of the same race as the four men reported to have just been seen stealing from the home.

When Officer Ramirez activated his emergency equipment to stop the specific car, the appellant, who was the driver, stopped in the middle of the road rather than pulling over to the side. Then, when the officer yelled at the occupants to stay in the car and began to approach it on foot, the appellant accelerated the car and fled. As the officer pursued the Honda, the appellant drove erratically and at speeds close to twice the posted limit. Ultimately, when the car hit a post, the appellant and its other occupants attempted to flee on foot.

The appellant, once apprehended, denied knowing that the items in the front passenger's floorboard, back seat pockets, and trunk were stolen and claimed that he fled twice merely because he did not have a driver's license. However, the trial court, as the finder of fact, was

- 9 -

permitted to disbelieve him and conclude that he was lying to conceal his guilt. See Shackleford, 262 Va. at 209-10; Rollston, 11 Va. App. at 547-48. The court was also entitled to infer from the totality of the circumstances that the appellant fled, at least in part, because he had participated in the larceny of the stolen items in the car, as well as the burglary, along with the vehicle's other three occupants. See Ricks v. Commonwealth, 39 Va. App. 330, 337 (2002) (stating that when a defendant's "flight might have been attributable to several causes, 'consciousness of guilt' [can] be inferred by the trial court if any one of those [possible] causes was the . . . offense [at issue]"). Additionally, when the evidence is viewed in the light most favorable to the Commonwealth, the appellant admitted that he had been driving the car for an hour prior to the stop, which further supports the inference that he was driving it during the time period for the burglary and was one of the individuals who illegally entered the Ayotte home and committed larceny.

On this record, the trial court was entitled to conclude that the only reasonable hypothesis flowing from the evidence was that the four men who very recently burgled the house were the same four men in the car that contained the stolen goods. Based on the appellant's failure to provide an explanation for his possession of the stolen items that the trial court believed, it was entitled to apply the inferences to conclude, in combination with all of the evidence, that the appellant was guilty of the larceny and burglary beyond a reasonable doubt.[8]

### B. Conspiracy to Commit Burglary

The appellant also challenges the sufficiency of the evidence to prove that he entered into a conspiracy to burglarize the victims' home.

---

[8] Because the evidence supports a finding that the appellant was an active participant in the larceny and burglary, we do not address whether the evidence supports a finding that he was guilty of larceny and burglary as a principal in the second degree. See, e.g., Salahuddin v. Commonwealth, 67 Va. App. 190, 211 n.7 (2017) (applying "best and narrowest ground" principles (quoting Abney v. Commonwealth, 51 Va. App. 337, 353-54 (2008))).

- 10 -

A conspiracy is "an agreement between two or more persons by some concerted action to commit an offense." Speller v. Commonwealth, 69 Va. App. 378, 389 (2018) (quoting Wright v. Commonwealth, 224 Va. 502, 505 (1982)); see id. at 390 (noting that proof of an overt act is not required to establish a conspiracy in Virginia). The Commonwealth bears the burden to "prove beyond a reasonable doubt that an agreement existed." Feigley v. Commonwealth, 16 Va. App. 717, 722 (1993) (quoting Floyd v. Commonwealth, 219 Va. 575, 580 (1978)).

Nevertheless, the Commonwealth "need not prove an *explicit* agreement." Gray v. Commonwealth, 30 Va. App. 725, 736 (1999) (emphasis added). Instead, as with any crime, the elements of a conspiracy, including the existence of an agreement, "may be proved by circumstantial evidence." Floyd, 219 Va. at 580. "[A] common purpose and plan may be inferred from a 'development and collocation of circumstances.'" Id. at 581 (quoting United States v. Godel, 361 F.2d 21, 23 (4th Cir. 1966)). Although no overt act is *required* to prove the existence of a conspiracy, when the evidence shows that the defendants "by their acts pursued the same object, one performing one part and the others performing another part so as to complete it or with a view to its attainment, the [fact finder] will be justified in concluding that they were engaged in a conspiracy to effect that object." Charity v. Commonwealth, 49 Va. App. 581, 586 (2007) (quoting Brown v. Commonwealth, 10 Va. App. 73, 78 (1990)). "Because most conspiracies are 'clandestine in nature,' by 'the very nature of the offense, it often may be established only by indirect and circumstantial evidence.'" James v. Commonwealth, 53 Va. App. 671, 678 (2009) (citation omitted) (first quoting 2 Wayne R. LaFave, Substantive Criminal Law § 12.2(a), at 266 (2d ed. 2003); then quoting Wright, 224 Va. at 505); see Williamson v. State, 685 S.E.2d 784, 793 (Ga. Ct. App. 2009) (holding that relevant circumstantial evidence of conspiracy includes factors "such as presence, companionship[,] and conduct before and after the commission of the . . . offense").

In light of these legal principles, the trial court was not plainly wrong in finding that the acts of the appellant and his companions in breaking and entering and stealing from the victims' residence were "not . . . completely spontaneous without a sufficient prior agreement to go in and take these things." The evidence supports the inference that the four men were traveling together in the Honda and arrived at the Ayottes' residence together at a time when no one was home. It also supports a finding that they worked together to remove numerous items from the residence, including three televisions, two video game consoles, and numerous smaller items, which were recovered both from the trunk of the vehicle and throughout the interior. Finally, the evidence establishes that the four men left the scene together in the Honda, were together when pulled over by the police, and all fled, first by car and then on foot when the car crashed. See Velez-Suarez v. Commonwealth, 64 Va. App. 269, 278-79 (2015) (affirming where co-conspirators shoplifted together); Ladd v. State, 87 So. 3d 1108, 1113 (Miss. Ct. App. 2012) (affirming where co-conspirators "worked in unison" to steal "lawn equipment"); cf. Wright, 224 Va. at 505-06 (affirming where robbery co-conspirators parked in a secluded area and moved through "the weeds" toward a nearby restaurant with masks, gloves, and a loaded firearm); Speller, 69 Va. App. at 390 (where the defendant conceded that the evidence proved that he conspired with others to burglarize a home, holding that the evidence also established that they conspired to burglarize a second home because they fled together and had stolen property from both homes). This evidence, viewed under the appropriate standard, supports the trial court's finding of the collocation of circumstances necessary to establish a conspiracy to break and enter with the intent to commit larceny.

## III. CONCLUSION

We hold that the evidence establishes that the appellant committed the grand larceny and burglary and that he and his companions conspired to commit the offenses. Accordingly, we affirm the challenged convictions.

<u>Affirmed.</u>